2010 Ark. 26

**Peter ROSENOW, Individually, and on Behalf of a Class of Similarly Situated Persons, Appellant,**

v.

**ALLTEL CORPORATION and Alltel Mobile Communications, Inc., Appellees.**

No. 09–463.

Supreme Court of Arkansas.

Jan. 21, 2010.

Rehearing Denied March 4, 2010.

executive clemency and is unavailing in a Rule 37.1 petition. *Pettit v. State,* 296 Ark. 423, 758 S.W.2d 1 (1988).

Todd Turner, Arkadelphia, and Scott E. Poynter, Little Rock, for appellant.

Quattlebaum, Grooms, Tull & Burrow PLLC, by: Steven W. Quattlebaum, E.B. Chiles IV, and Chad W. Pekron, Little Rock, for appellees.

DONALD L. CORBIN, Justice.

Appellant Peter Rosenow, individually, and on behalf of a class of similarly situated persons, appeals the order of the Saline County Circuit Court denying his motion for class certification. On appeal, Appellant argues that the circuit court abused its discretion (1) by denying class certification on the basis that the elements of commonality, predominance, and superiority could not be satisfied; and (2) by denying his motion to strike the expert opinion of Dr. Jerry A. Hausman, regarding the calculation of potential damages incurred by Appellees. This court assumed jurisdiction of this case; hence, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(d) (2009). We reverse and remand this matter to the circuit court.

On February 15, 2006, Appellant filed a complaint, individually, and on behalf of a purported class, against Appellees Alltel Corporation and Alltel Mobile Communications, Inc., alleging damages resulting from Appellees' imposition of an early termination fee against its customers.[1] In his complaint, Appellant, who initially obtained cellular service with Appellees in 1997, states that he chose to terminate his cellular service because of dissatisfaction with the service Appellees provided. He was then charged an early termination fee of $200. Appellant disputed the fee and requested a copy of the contract that would justify imposition of the fee. Appellees refused to provide any contracts, claiming they were not required to do so. Appellant further stated that to his knowledge he never signed any contract or oth-

---

1. Although Alltel's assets were purchased by Verizon Wireless and its stores renamed under the Verizon brand, the parties refer to Appellees as Alltel; thus, this court will do the same.

erwise agreed to pay an early termination fee. When Appellant refused to pay the fee, Appellees continued to add additional late fees and taxes to his account, with the total due being $229.87. Appellant paid the bill in full, but under protest, on October 17, 2005, out of fear that Appellees would take adverse action against him.

Thereafter, Appellant filed the instant suit alleging that imposition of the early termination fee violated the Arkansas Deceptive Trade Practices Act (ADTPA), and also constituted a violation of the common law theory of unjust enrichment. Appellant further alleged that the requirements for a class action could be satisfied and requested that a class be certified and defined as

> [a]ll Arkansas residents, excluding Defendants' employees, who have paid the Defendants' early termination fee within the last five years immediately preceding the date of the filing of the Complaint up through and including the date of the judgment in this case.

In his prayer for relief, Appellant requested, among other things, that the circuit court declare the fee to be void, order Appellees to extinguish all such fees on the accounts of class members, and to refund the class members any and all early termination fees and any related fees previously paid.

Appellees opposed class certification. As part of the evidence used to support their position against class certification, Appellees submitted a "declaration" by Dr. Hausman, an economics and telecommunications expert from the Massachusetts Institute of Technology. Dr. Hausman compared the early termination fee to Appellees' potential losses and then made the following conclusions: (1) there was no injury to the members of the alleged class; (2) there existed an intraclass conflict based on calling plans, termination dates, etc.; and (3) certification of a class was not warranted because of the necessity of individualized determinations of injuries. Finally, Dr. Hausman stated that there was a possibility that an intraclass conflict might arise because some customers could owe more in damages than the $200 early termination fee and because a majority of subscribers would prefer to sign a contract and be subjected to the early termination fee.

Appellant filed a motion to strike this declaration, arguing that it was not admissible under Ark. R. Evid. 702, as it was a legal opinion that told the court how to rule. Appellant also argued that Dr. Hausman's opinion was unreliable and therefore inadmissible.

A hearing on the issue of class certification and on the motion to strike the declaration was held on October 8, 2007. Before ruling on the motion to strike, the circuit court allowed Dr. Hausman to testify. His testimony reiterated his conclusions found in the previously submitted declaration. Ultimately, the circuit court denied Appellant's motion to strike the expert opinion of Dr. Hausman. The court also denied the request for class certification. A written order was entered on January 26, 2009. Therein, the circuit court concluded that Appellant had satisfied his burden under Ark. R. Civ. P. 23, with regard to typicality, numerosity, and adequacy. However, the court further found that Appellant had not satisfied his burden with regard to commonality, predominance, and superiority. Specifically, the circuit court found that each class member would need to prove that "the ETF is disproportionate to Alltel's actual damages arising out of the particular class member's breach of contract by terminating early" in order to establish that the fee is not a valid liquid-damages provision. The circuit court concluded that because there

was no common amount of damages sustained by Appellees as a result of early termination, it would be necessary to conduct individual comparisons and, thus, class certification was not appropriate. This appeal followed.

As his first point on appeal, Appellant argues that the circuit court abused its discretion in denying his request for class certification. According to Appellant, the circuit court utilized an improper merits-based analysis that led to the conclusion that the requirements of commonality, predominance, and superiority could not be satisfied. Appellees counter that the circuit court did not delve into the merits of the case but rather looked to the elements of Appellants' claims to determine that class certification was not warranted.

▬▬▬ ⌊In reviewing a circuit court's decision to grant or deny class certification, we give circuit courts broad discretion and will reverse only when the appellant can demonstrate an abuse of discretion. *Simpson Housing Solutions, LLC v. Hernandez*, 2009 Ark. 480, 347 S.W.3d 1. When reviewing a circuit court's class-certification order, we review the evidence contained in the record to determine whether it supports the circuit court's decision. *Id.* Neither this court nor the circuit court delves into the merits of the underlying claims at this stage, as the issue of whether to certify a class is not determined by whether the plaintiff has stated a cause of action for the proposed class that will prevail. *Id.; see also Johnson's Sales Co. v. Harris*, 370 Ark. 387, 260 S.W.3d 273 (2007).

Class actions are governed by Rule 23 of the Arkansas Rules of Civil Procedure, which provides in pertinent part:

(a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. At an early practicable time after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. For purposes of this subdivision, "practicable" means reasonably capable of being accomplished. An order under this section may be altered or amended at any time before the court enters final judgment. An order certifying a class action must define the class and the class claims, issues, or defenses.

⌊Ark. R. Civ. P. 23(a), (b) (2009). Our law is well settled that the six requirements for class-action certification include: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *See Flow Doc, Inc. v. Horton,* 2009 Ark. 411, 334 S.W.3d 865. We need only discuss the three contested requirements: commonality, predominance, and superiority. We begin with commonality and predominance.

▬▬▬ Pursuant to Rule 23(a)(2), the trial court must determine whether "there are questions of law or fact common to the class." This court has stated that this

requirement is case specific. *Johnson's Sales*, 370 Ark. 387, 260 S.W.3d 273. We have previously stated the following regarding the commonality issue:

> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the rule 23(a)(2) prerequisite is . . . that there need be only a single issue common to all members of the class. . . . When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.

*Hernandez*, 2009 Ark. 480, at 9, 347 S.W.3d at 8 (quoting Herbert B. Newberg, Newberg on Class Actions, § 3.10 (3d ed.1993)). The circuit court "must determine what elements in a cause of action are common questions for the purpose of certifying a class." *Id.* at 9, 347 S.W.3d at 8 (quoting *Williamson v. Sanofi Winthrop Pharm., Inc.*, 347 Ark. 89, 96–97, 60 S.W.3d 428, 432–33 (2001)). Moreover, commonality is satisfied where "the defendant's acts, independent of any action by the class members, establishes a common question relating to the entire class." *Id.*

Here, the circuit court did not identify any common issues to be resolved. In ruling that the elements of commonality and predominance could not be satisfied, the circuit court instead focused on the fact that Appellees, depending on the contract terms with its customers and when those customers terminated their service, might have suffered damages in excess of the $200 early termination fee. Thus, according to the circuit court's reasoning, the claims of prospective class members would be highly individualized and thereby defeat the requirements of commonality and predominance. The circuit court, in its order, stated:

> Mr. Rosenow alleges that the ETF is excessive and that it operates as a "penalty" because it is allegedly unreasonable when compared to Alltel's actual damages. However, there is no common amount of damages sustained by Alltel as a result of an early termination. Because the amount of Alltel's breach-of-contract damages varies from subscriber to subscriber, individual comparisons must be conducted. As explained below, if this case proceeded as a class action, this Court would have to examine potentially thousands of customer transactions, assessing on a customer-by-customer basis whether the ETF is reasonable in relation to Alltel's actual damages arising out of each customer's breach of contract.

The circuit court further reasoned that Appellant was alleging that the early termination fee was a penalty because it was unreasonable when compared to Alltel's actual damages and, thus, in order to determine if the fee was in fact a penalty, the court would have to conduct a customer-by-customer assessment. The court based this reasoning on the belief that

> [a]n essential element of each putative class member's penalty claim is that the ETF is disproportionate to Alltel's actual damages arising out of the particular class member's breach of contract by terminating early.

Relying on Dr. Hausman's expert opinion, the circuit court noted that, at a minimum, it would be necessary to determine Alltel's lost profits resulting from a premature termination by reviewing the customer's wireless plan and how much time remained on the customer's contract when he or she terminated. Further, the circuit court noted that if the early termination fee was invalidated, Alltel would be enti-

tled to a setoff, as it would be allowed to recover its actual damages resulting from each class member's breach of contract. The circuit court also concluded that there could be an intraclass conflict because if the court invalidates the early termination fee, some class members could be exposed to liability in excess of $200.

Clearly, the reasoning by the circuit court goes well beyond the procedural issues of whether there are any common issues and whether those common issues predominate. The circuit court's focus in analyzing the requirements of Rule 23 was possible damages sustained by Alltel, and not the claims alleged by Appellant on behalf of the class.

We disagree with Appellees' assertion that the circuit court had to consider damages, as they were an element of Appellant's claim. It is true that this court has acknowledged that consideration of the elements of the underlying claim may be important to determine whether any questions are common to the class and whether those questions will resolve the issue. *Williamson*, 347 Ark. 89, 60 S.W.3d 428. Here, though, the circuit court went beyond a consideration of the elements of Appellant's claim. In order to reach the conclusion that it did, the circuit court necessarily had to determine that there was no merit to Appellant's claim that imposition of the fee violated the ADTPA, nor was there merit to the claim that the early termination fee is not enforceable. Conducting this merits-based analysis was an abuse of discretion.

■■■ The proper starting point in analyzing commonality is whether there is at least one single issue common to all members of the class. *See Union Pac. R.R. v. Vickers*, 2009 Ark. 259, 308 S.W.3d 573. In this case, Appellant alleges that the common wrong giving rise to this litigation is that the Appellees engaged in an unfair and deceptive business practice of imposing the early termination fee. Appellant further asserts a laundry list of common questions of law and fact that stem from this alleged common wrong. There must be a determination on these common issues. The mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members. *Nat'l Cash, Inc. v. Loveless*, 361 Ark. 112, 205 S.W.3d 127 (2005). Moreover, an attempt to raise defenses at this stage is an attempt to delve into the merits of the case. *Id.; see also Johnson's Sales*, 370 Ark. 387, 260 S.W.3d 273 (stating that the possibility that appellant may raise affirmative defenses or counterclaims does not defeat class certification); *Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 5 S.W.3d 423 (1999) (holding that the circuit court could not examine the affirmative defenses of release and consent in deciding whether to grant certification).

■■■ Once commonality is determined, the next question is whether common questions of law and fact predominate over any questions affecting only individual members. *Johnson's Sales*, 370 Ark. 387, 260 S.W.3d 273. Notably, the predominance requirement is more stringent than commonality. *See Vickers*, 2009 Ark. 259, 308 S.W.3d 573.

In *Vickers*, this court recently summarized the standard for testing predominance:

When deciding whether common questions predominate over other questions affecting only individual members, this court does not merely compare the number of individual versus common claims. Rather, this court decides if the prelimi-

nary, overarching issues common to all class members "predominate over" the individual issues, which can be resolved during the decertified stage of a bifurcated proceeding. Thus, the mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members.

*Id.* at 9, 308 S.W.3d at 578–79 (citations omitted).

This court has further said that if a case involves preliminary issues common to all class members, predominance is satisfied even if the court must subsequently decertify a class due to individualized damages. *See, e.g., Farmers Ins. Co. v. Snowden,* 366 Ark. 138, 233 S.W.3d 664 (2006). However, if the preliminary issues are sufficiently individualized, then predominance is not satisfied and class certification is improper. *Id.* Indeed, a case that presents numerous individual issues regarding the defendants' conduct, causation, injury, and damages will best be resolved on a case-by-case basis. *Teris, LLC v. Chandler,* 375 Ark. 70, 289 S.W.3d 63 (2008). Stated another way, predominance does not fail simply because there are individual issues that may arise; the central question to be resolved by the circuit court is whether there are overarching issues that can be addressed before resolving individual issues. *See FirstPlus Home Loan Owner 1997–1 v. Bryant,* 372 Ark. 466, 277 S.W.3d 576 (2008).

In the instant case, the circuit court concluded that the need to decide individualized issues defeated the predominance requirement. Again, however, the circuit court's starting point in analyzing the requirements of predominance erroneously focused on Appellees' potential damages rather than the common wrong alleged by Appellant. As a result, the circuit court abused its discretion by delving into the merits of this case to determine that this requirement was not satisfied.

The final requirement of Rule 23 found by the circuit court to be lacking in this case was superiority. This court has repeatedly held that the superiority requirement is satisfied if class certification is the more efficient way of handling the case and it is fair to both sides. *See, e.g., Bryant,* 374 Ark. 38, 285 S.W.3d 634. When determining whether a class action is the superior method of adjudication, it may be necessary for the circuit judge to evaluate the manageability of the class. *Id.* The avoidance of multiple suits lies at the heart of any class-action decision. *Id.* Furthermore, where a cohesive and manageable class exists, we have often held that "real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for a trial on individual issues, if necessary." *Snowden,* 366 Ark. at 150, 233 S.W.3d at 672.

This court has repeatedly recognized that conducting a trial on the common issue in a representative fashion can achieve judicial efficiency. *See General Motors Corp. v. Bryant,* 374 Ark. 38, 285 S.W.3d 634 (2008). Furthermore, we have routinely stated that the bifurcated process of class actions is consistent with Rule 23(d), which allows the circuit court to enter orders necessary for the appropriate management of the class action. *Id.* In fact, we have expressed our approval for the bifurcated approach to the predominance element by allowing circuit courts to divide a case into two phases: (1) certification for resolution of the preliminary, common issues; and (2) decertification for the resolution of the individual issues. *Id.* The

bifurcated approach has only been disallowed where the preliminary issues to be resolved were individual issues rather than common ones. *Id.*

Here, by focusing on the merits of the case, the court noted that it might be necessary to conduct thousands of minitrials that would overwhelm its docket and thus concluded that the superiority requirement was not satisfied. However, as we have explained, the circuit court's reasoning was based on an impermissible evaluation of the merits of this case. Accordingly, the circuit court abused its discretion in finding that the requirement of superiority could not be satisfied.

As his second point on appeal, Appellant argues that it was error for the circuit court to deny his motion to strike the testimony of Dr. Hausman regarding the calculation of Appellees' damages. Appellant argues that Dr. Hausman's expert opinion told the circuit court how to rule on the underlying merits of the case and, therefore, invaded the province of the circuit court. He also argues that the testimony was unreliable. Appellees counter that the circuit court did not abuse its discretion in denying the motion to strike.

This court has long recognized that the admissibility of expert testimony rests largely within the broad discretion of the trial court and that an appellant bears the burdensome task of demonstrating that the trial court abused its discretion. *Williams v. First Unum Life Ins. Co.*, 358 Ark. 224, 188 S.W.3d 908 (2004).

Rule 702 provides that a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Ark. R. Evid. 702 (2009). Rule 704 governs expert opinions touching on the ultimate issue and provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Ark. R. Evid. 704 (2009).

In *Unum*, this court concluded that proffered expert testimony from a witness, who was an attorney, regarding whether a term in a contract was ambiguous was properly excluded because such testimony would have been unduly confusing to the jury and would have invaded the role of the circuit court in instructing the jury on the operative law. In this case, Dr. Hausman's testimony focused on Alltel's damages and how other costs might increase if the early termination fees were invalidated. As explained with regard to the requirements of Rule 23, Dr. Hausman's opinion was concerned with the underlying merits of this case. As it is improper to consider the underlying merits at the class-certification stage of proceedings, Dr. Hausman's opinion was not relevant to the issue of whether a class should be certified. Moreover, his expert opinion violated Rule 704, as it contained conclusions that invaded the role of the circuit court. Accordingly, the circuit court abused its discretion in denying Appellant's motion to strike.

We reverse the circuit court's order denying Appellant's motion for class certification and denying his motion to strike the expert opinion of Dr. Hausman. We remand to the circuit court for a proper determination of whether the requirements of Rule 23 can be satisfied in this case.

Reversed and remanded.

BROWN, J., dissents in part; concurs in part.

BROWN, J., dissenting in part and concurring in part.

This proposed class action involves 65,000 putative members. The contention of the class representatives in their class-action complaint is that the early termination fee imposed by Alltel Corporation on its cellular phone customers is a deceptive trade practice. Among the allegations made by the class representatives as reasons for this conclusion are:

> (d) the early termination fee is an illegal penalty;

> . . . .

> (f) there is no legitimate basis for imposing the early termination fee;

> . . . .

> (o) the fee is not a valid liquidated damages provision because it is not reasonably related to any action or anticipated losses sustained by the Defendants;

> . . . .

> (s) the early termination fee is unreasonable.

The complaint also contained a claim for unjust enrichment, and alleged that:

> 36. The early termination fee does not reflect any actual expense or loss incurred by the Defendants when a customer decides to cancel cellular service.

> 37. The early termination fee is not a valid liquidated damages provision because it bears no reasonable relationship to the anticipated or actual losses that the Defendants sustain as a result of customer [sic] who cancel or transfer service.

> . . . .

> 39. The early termination fee is void as a penalty.

In both counts, the class representatives premise liability on the unreasonableness or illegitimacy of the fee and the fact that it is not tied to Alltel's anticipated losses.

The trial judge, in denying class certification, focused on the lack of a common amount of loss sustained by Alltel that would apply to all of the 65,000 putative class members. With respect to each of the proposed members, the judge foresaw the need to determine whether the termination fee was *reasonable* and legitimate. He concluded that the issues were individualized and that class certification, as a result, would present an untenable and unmanageable situation.

The majority holds that the judge abused his discretion in this conclusion. According to the majority, "In this case, Appellant alleges that the common wrong giving rise to this litigation is that the Appellees engaged in an unfair and deceptive business practice of imposing the early termination fee." The majority goes forward and holds that there must be a determination by the trial judge on this and the other common issues alleged.

The majority appears to be telling the trial judge that collecting the fee may well be a common issue of wrongdoing for the class. My problem with the opinion is that it then forecloses an analysis by the judge on remand into the elements of the claim necessary to prove that the fee is either reasonable or a penalty. The elements of an underlying claim are important, as the majority acknowledges, see *Williamson v. Sanofi Winthrop Pharm., Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001), but again the majority concludes that the necessary analysis of whether the fee is tied to Alltel losses would be merit based.

Apart from the fact that the fee-is-penalty allegation is conclusory, the trial judge, understandably, felt constrained to look at the elements of the class claim to determine if a penalty in fact was being assessed and a deceptive trade practice was

being perpetrated. Again, this goes back to the complaint where allegations are made that the fee is unreasonable in light of the anticipated losses Alltel will experience by early termination.

In short, I am hard-pressed to understand what the trial judge is supposed to do on remand. It seems his hands are tied in making the necessary analysis for common wrongdoing and predominance. If the majority forecloses an analysis on anticipated Alltel losses as the basis for the fee, the bald allegation that the fee is a penalty will stand as the common and predominant issue.

I further disagree with the majority's decision to strike the testimony of Dr. Hausman, Alltel's expert witness, on how early termination fees work. In a case of this complexity, it is important for the trial judge to be educated on what is involved. It occurs to me that a basic tutorial on early termination fees was important for the trial judge in the instant case. Striking that testimony eliminates important background information.

Nor do I believe the case of *Williams v. First Unum Life Ins. Co.*, 358 Ark. 224, 188 S.W.3d 908 (2004), is authority for striking Dr. Hausman's testimony. The *Unum* case involved an *attorney* testifying as an expert as to the law and whether the term "mental illness" was ambiguous. This court made it clear that attorneys are advocates, not experts, and that a legal opinion from an attorney invaded the province of the fact-finder and the province of the judge who instructs on what the law is. That situation does not pertain to the instant case.

I do, however, believe the trial judge bled over into the merits when he concluded, "Thus, there are potential intraclass conflicts of interest . . . ." and "The court is convinced that at least some of the proposed class members have suffered no

damages." Those findings are impermissible at this stage of the litigation.

This court has very rarely reversed the denial of class certification on abuse-of-discretion grounds and ordered a grant of certification. *See, e.g., Fraley v. Williams Ford Tractor and Equipment Co.,* 339 Ark. 322, 5 S.W.3d 423 (1999); *Summons v. Mo. Pac. R.R.,* 306 Ark. 116, 813 S.W.2d 240 (1991). We come perilously close to doing so in this case.

I would reverse and remand for the limited purpose of having the judge reevaluate his opinion in light of any objectionable merits-based determinations. I am convinced, though, that the majority opinion unduly limits the judge's analysis and discretion in doing the reevaluation.