2012 Ark. 366

**DIRECTV, INC., Appellant**

v.

**Jo MURRAY, Individually and on Behalf of an Arkansas Class of Similarly Situated Persons, Appellee.**

No. 11–1061.

Supreme Court of Arkansas.

Oct. 4, 2012.

Friday, Eldredge & Clark, LLP, Little Rock, by: Robert S. Shafer and William A. Waddell, Jr.; Haltom & Doan, by: Darby V. Doan; and Kirkland & Ellis LLP, by: Melissa D. Ingalls and Robyn E. Bladow, for appellant.

Emerson Poynter LLP, by: Scott E. Poynter, Christopher D. Jennings, William T. Crowder, Little Rock, Corey D. McGaha, and John G. Emerson, Little Rock; and Arnold, Batson, Turner & Turner, P.A., by: Todd Turner, Arkadelphia, and Dan Turner, for appellee.

DONALD L. CORBIN, Justice.

Appellant, DIRECTV, Inc., appeals the orders of the Miller County Circuit Court denying DIRECTV's motion to compel arbitration and granting the motion of Appellee, Jo Murray, for class-action certification. Both orders are immediately appealable pursuant to Ark. R.App. P.-Civ. 2(a)(9) & (12) (2012). We find no reversible error and affirm both orders.

In March 2010, Murray initiated this putative class-action lawsuit against DIRECTV and Pro Sat and Home Entertainment (Pro Sat). Murray later sought the dismissal with prejudice of Pro Sat. In her first amended complaint, Murray sought damages for herself individually and on behalf of other former DIRECTV subscribers who paid an early cancellation fee to DIRECTV after they terminated DIRECTV's service. Murray alleged that DIRECTV's enforcement and collection of its early cancellation fee was deceptive and unconscionable in violation of the Arkansas Deceptive Trade Practices Act (ADTPA), Ark. Code Ann. §§ 4–88–101 to–804 (Repl.2011). Murray moved to certify the litigation as a class action pursuant to Ark. R. Civ. P. 23 (2012).

DIRECTV moved to dismiss or stay court proceedings and to compel Murray to arbitration in accordance with the arbitration provision in the customer agreement that DIRECTV alleged had been mailed with Murray's first billing statement. In opposition, Murray challenged the adequacy of DIRECTV's proof of the customer agreement and argued further that the arbitration provision in the customer agreement, as well as the customer agreement as a whole, lacked mutuality of obligation.

The circuit court held a hearing on both the motion to compel arbitration and the motion for class certification, taking both motions under advisement at the conclusion of the hearing. The circuit court later entered a written order denying the motion to compel arbitration and striking some of the proof DIRECTV had offered in support of its motion. On the same day, the circuit court entered a separate order granting Murray's motion for class certification. DIRECTV has timely appealed both orders.

### I. Arbitration

We first consider DIRECTV's appeal from the order denying its motion to dismiss or stay proceedings and compel arbitration. It is significant to note at the outset that, as acknowledged by both parties during oral argument and as reflected in the motion itself, DIRECTV's motion to

compel arbitration was filed with respect to Murray only and not to the putative class members. For reversal, DIRECTV argues that it presented uncontroverted proof that Murray had received and accepted the customer agreement, which contained the ┃₃parties' arbitration provision, and that the circuit court erred in ruling otherwise on the adequacy of its proof and striking the proof it offered. DIRECTV assigns further error to the circuit court's independent and alternative rulings on the unenforceability of the arbitration provision and the customer agreement as a whole due to a lack of mutuality of obligation.

## A. Standard of Review

■ This court reviews a circuit court's order denying a motion to compel arbitration de novo on the record, with the entire case being open for review. *See BDO Seidman, LLP v. SSW Holding Co.*, 2012 Ark. 1, 386 S.W.3d 361. The customer agreement containing the arbitration provision at issue here states that the arbitration provision is governed by the Federal Arbitration Act (FAA). Murray does not dispute that interstate commerce is involved. State and federal courts have concurrent jurisdiction to enforce an arbitration agreement pursuant to the terms of the FAA. *Walton v. Lewis*, 337 Ark. 45, 987 S.W.2d 262 (1999).

■ Although an arbitration provision is subject to the FAA, courts looks to state contract law to decide whether the parties' agreement to arbitrate is valid. *See Barker v. Golf U.S.A., Inc.*, 154 F.3d 788 (8th Cir.1998) (citing *Perry v. Thomas*, 482 U.S. 483, 493–94 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). Courts may apply state law to arbitration agreements only to the extent that it applies to contracts in general. *Id.* at 788 (citing *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265,

115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). The *Barker* court put this another way, stating "[W]e may not invalidate an arbitration agreement under any state law applicable only to arbitration provisions; instead, we may apply only a state's general contract defenses." *Id.* at 791 (citing *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).

■ ┃₄According to Arkansas law, arbitration is a matter of contract between the parties, and the question of whether a dispute should be submitted to arbitration is a matter of contract construction. *Independence Cnty. v. City of Clarksville*, 2012 Ark. 17, 386 S.W.3d 395. The same rules of construction apply to arbitration agreements as apply to agreements generally, thus this court seeks to give effect to the intent of the parties as evidenced by the arbitration agreement itself. *Id.* The construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law. *Id.*

## B. Adequacy of Proof Offered

DIRECTV raises three challenges to the circuit court's rulings on the adequacy of its proof in support of its motion to compel Murray to arbitration. DIRECTV contends that (1) the circuit court misapplied this court's case law, specifically *Alltel Corp. v. Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005); (2) the circuit court misapplied the Arkansas Rules of Evidence; and (3) the circuit court misapplied Arkansas law on contract formation. Murray responds that DIRECTV failed to meet its burden of proof that the parties made a valid agreement to arbitrate.

In support of its motion to compel arbitration, DIRECTV offered the affidavit and supplemental affidavit of Valerie W. McCarthy, Senior Manager in Customer Care for DIRECTV. DIRECTV emphasizes that because Murray did not offer

any proof in opposition to its motion to compel, DIRECTV's proof in support was uncontroverted.

In her affidavits, McCarthy attested to some general information about DIRECTV and its policies, explaining that it provides digital television service to consumers nationwide and that potential subscribers obtain the equipment necessary to receive DIRECTV's satellite signal either directly from DIRECTV or from a retailer. Once the equipment is installed and the potential customer selects a package of programming services, McCarthy explained that DIRECTV then activates the customer's service and the customer begins to receive programming. McCarthy stated that the relationship between DIRECTV and its customers is governed by its customer agreement, which is available on the company's website and is mailed to each customer along with the first billing statement. According to McCarthy, since 1994, the vendor responsible for mailing DIRECTV's billing statements is DST Output. McCarthy stated in her affidavit that she had visited the DST Output operating center in Hartford, Connecticut, where the billing statements were prepared and mailed, and that she was familiar with the procedures by which DST Output performs its services. McCarthy explained that those procedures include a method for DIRECTV to dictate the specific items to be included with the bill, in addition to automated equipment to print, insert, and mail the bill statements from the data that DIRECTV provides.

In her affidavits, McCarthy also attested to some specific information relating to Murray's relationship with DIRECTV. McCarthy averred that Murray signed up for DIRECTV service on January 25, 2007, through DirectHD.TV, a retail dealer in Texarkana, Arkansas. As a new customer, McCarthy averred that Murray received free installation and was allowed to lease four standard receivers and all of the equipment necessary to receive DIRECTV service; Murray also received a $12 credit per month on programming services. According to McCarthy, Murray activated her DIRECTV service on January 26, 2007, and in so doing agreed to maintain a certain level of programming for twelve months. McCarthy proclaimed that DIRECTV's records reflected that DST Output mailed Murray's first billing statement to her at 327 Meadowridge Circle, Texarkana, Arkansas 71854–9579, on or about January 27, 2007, and included with that first statement a copy of the DIRECTV customer agreement then in effect, which McCarthy defined as the customer agreement "effective as of May 1, 2006, until replaced." McCarthy explained that the front page of Murray's billing statement reminded Murray of the programming term that Murray agreed to when she activated her receiving equipment, and that she could be charged an early cancellation fee if she chose not to fulfill her programming term. McCarthy asserted that "[a]fter receiving the Customer Agreement, Ms. Murray did not call DIRECTV to dispute any terms or conditions in the agreement, and did not immediately cancel her DIRECTV services." McCarthy stated, however, that Murray did cancel her services on February 5, 2007. Because Murray cancelled services before the end of her programming commitment, McCarthy explained, DIRECTV assessed a prorated early cancellation fee. McCarthy proclaimed that "[a] true and correct copy of Ms. Murray's Customer Agreement with DIRECTV [wa]s attached as Exhibit 1" to her affidavit. Also attached as exhibits were the front and back sides of a billing statement that McCarthy averred contained the same information that would have been printed on the billing

statement mailed to Murray in January 2007.

The circuit court made several independent and alternative rulings concerning the adequacy of the McCarthy affidavits. The court's first ruling addressed the adequacy of the affidavits to establish that Murray received notice of the customer agreement, which contained the arbitration provision at issue, that DIRECTV alleged was mailed with Murray's first billing statement. Specifically, the circuit court relied on *Sumner*, 360 Ark. 573, 203 S.W.3d 77, and noted that the McCarthy affidavits required the court to infer that DIRECTV's independent vendor, DST Output, followed DIRECTV's billing-statement preparation and mailing procedures based solely on the affidavits, not of the vendor, but instead of one of DIRECTV's employees, namely McCarthy. The circuit court concluded that this fell short of the specific evidence needed for the court to infer that DST Output implemented DIRECTV's practices and procedures as required by *Sumner*. The circuit court's second ruling on the adequacy of the McCarthy affidavits was made with respect to the Arkansas Rules of Evidence. The circuit court struck the McCarthy affidavits based on considerations of personal knowledge, authentication, and hearsay. Despite having struck the McCarthy affidavits, the circuit court went on to consider the information contained therein and issued its third independent, alternative ruling with respect to the adequacy of DIRECTV's proof. Specifically, the circuit court ruled that even if the court presumed that the arbitration agreement was adequately communicated to Murray as required by *Sumner*, it was not communicated to her until after Murray's service had begun. In addition, the circuit court ruled that "Murray terminated DIRECTV's service so quickly after she could have possibly received the first bill-

ing statement, that the arbitration clause could not have been accepted by her continued use of DIRECTV's services."

We need not address the merits of DIRECTV's arguments concerning the circuit court's application of *Sumner* and the Arkansas Rules of Evidence, because even assuming, arguendo, that the circuit court erred in these rulings, DIRECTV cannot demonstrate any prejudice therefrom given that the circuit court went on to make an independent and alternative ruling on the adequacy of the proof to establish Murray's assent to the arbitration provision by her continued use of DIRECTV's service. In making this independent and alternative ruling, the circuit court in effect viewed the evidence in the affidavits as true regarding the notice and communication of the arbitration terms and concluded that, because Murray cancelled her service so quickly, DIRECTV still failed to prove that Murray ever assented to those arbitration terms. As the circuit court viewed the challenged proof as true in making its alternative ruling on the formation of the contract, DIRECTV cannot demonstrate any prejudice from the alleged errors relating to admission of the proof.

DIRECTV contends that the circuit court misapplied Arkansas law on contract formation in making this ruling because Murray did not, as required by the express terms of the customer agreement, terminate her services "immediately upon receipt" of the first billing statement and customer agreement if she did not agree with their terms. Rather, DIRECTV contends she terminated services a full nine days after the customer agreement had been mailed to her. DIRECTV cites *James v. P.B. Price Constr. Co.*, 240 Ark. 628, 401 S.W.2d 206 (1966), for the proposition that a party, by knowingly ac-

cepting the benefits of a proposed contract, is bound by its terms. While we agree that this general proposition is the law in Arkansas, we do not agree that the circuit court misapplied that principle of law, or other Arkansas law on formation of contracts, in this case. It is well settled in Arkansas that in order to form a contract there must be a meeting of the minds as to all terms, using objective indicators. *Sumner*, 360 Ark. 573, 203 S.W.3d 77 (citing *Williamson v. Sanofi Winthrop Pharm., Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001)). Both parties must manifest assent to the particular terms of the contract. *Sumner*, 360 Ark. 573, 203 S.W.3d 77 (citing *Van Camp v. Van Camp*, 333 Ark. 320, 969 S.W.2d 184 (1998)).

On this de novo review, we cannot say the circuit court erred in making the independent, alternative ruling that DIRECTV failed to prove Murray's assent to the arbitration provision by her continued use of DIRECTV services, as it is certainly reasonable for the circuit court to view the cancellation, which occurred nine or ten days into a twelve-month contract, as falling closer to "immediate termination" than to "continued use." Accordingly, we find no merit to DIRECTV's argument challenging the circuit court's ruling on the inadequacy of proof to show Murray's assent to the arbitration agreement. As noted, because we affirm the circuit court's ruling on Murray's cancellation and lack of assent to the arbitration provision, we need not address DIRECTV's arguments as to the circuit court's alternative rulings on the application of *Sumner* and the Rules of Evidence. *See Nicholson v. Upland Indus. Dev. Co.*, 2012 Ark. 326, 422 S.W.3d 108.

### C. Mutuality of Obligation

As its second point for reversal of the order denying its motion to compel Mur-

ray to arbitration, DIRECTV contends (1) that the circuit erroneously ruled on the enforceability of the customer agreement as a whole; (2) that the FAA preempts Arkansas law requiring a special kind of mutuality for arbitration clauses that is not required by other contract provisions; and (3) that in any event, the arbitration clause satisfies the Arkansas-specific mutuality requirement.

It bears repeating here that, as we noted at the outset of our discussion of DIRECTV's challenges to the adequacy of its proof in support of its motion to compel arbitration, DIRECTV's motion to compel arbitration was filed as to Murray only and not as to the putative class members. As we have affirmed the circuit court's ruling that Murray did not assent to the arbitration agreement, and as DIRECTV has not moved to compel arbitration of the class's claims, there is no longer any arbitration agreement properly before us to consider.

We recognize that the circuit court made independent, alternative rulings to answer these questions concerning mutuality because DIRECTV and Murray raised them below. However, these arguments on the alternative mutuality rulings would be important on appeal only if we were to conclude that DIRECTV's adequacy-of-proof questions on appeal had merit. However, DIRECTV did not move to compel arbitration of the class's claims, and because we affirmed the ruling that Murray did not assent to the arbitration agreement, there is no arbitration agreement properly before us to consider. Any opinion we could offer on DIRECTV's allegations of error in the circuit court's rulings on the unenforceability of the arbitration agreement and the customer agreement as a whole due to lack of mutuality of obligation would therefore be advisory. And it is well settled that this court does not issue advisory opinions. *See, e.g., Bakale-*

*kos v. Furlow,* 2011 Ark. 505, 410 S.W.3d 564 (citing *Nelson v. Ark. Rural Med. Practice Loan & Scholarship Bd.,* 2011 Ark. 491, 385 S.W.3d 762). Accordingly, we do not address DIRECTV's arguments concerning the circuit court's rulings on the lack of mutuality of obligation in the agreements at issue here.

We affirm the circuit court's order denying DIRECTV's motion to compel Murray to arbitration on the basis that Murray cancelled her service so quickly she did not assent to the arbitration agreement by her continued use of service.

## II. *Class–Action Certification*

We turn now to DIRECTV's appeal of the circuit court's order certifying a class action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure. DIRECTV raises four arguments in support of its contention that the circuit court abused its discretion in certifying this case as a class action. DIRECTV assigns error to the circuit court's rulings on the typicality, predominance, numerosity, and superiority requirements of Rule 23. For the reasons discussed below, we find no abuse of discretion and affirm the order of class certification.

▇▇▇▇ Our law is well settled that the six requirements for class-action certification as stated in Rule 23 include (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *Gen. Motors Corp. v. Bryant,* 374 Ark. 38, 285 S.W.3d 634 (2008). In reviewing a circuit court's decision to grant or deny class certification, we give circuit courts broad discretion and reverse only when the appellant can demonstrate an abuse of discretion. *Rosenow v. Alltel Corp.,* 2010 Ark. 26, 358 S.W.3d 879. When reviewing a circuit court's class-certification order, we review the evidence contained in the record to determine whether it supports the circuit court's decision. *Id.* Neither this court nor the circuit court delves into the merits of the underlying claims at this stage, as the issue of whether to certify a class is not determined by whether the plaintiff has stated a cause of action for the proposed class that will prevail. *Id.* On this point, this court has explained that a circuit court may not consider whether the plaintiffs will ultimately prevail, or even whether they have a cause of action. *Gen. Motors Corp.,* 374 Ark. 38, 285 S.W.3d 634. This court thus views the propriety of a class action as a procedural question. *Id.*

### A. Typicality and Predominance— Programming Commitment Agreement

DIRECTV contends that "Murray cannot satisfy Rule 23's typicality and predominance requirements for a class challenge to a programming commitment agreement [that] she never was a party to." The short answer to this argument is that neither Murray nor the class presents a challenge to the programming commitment agreement. Their claim is not for breach of contract. Rather, as the circuit court found, the challenge in this case is to DIRECTV's overall conduct in collecting the early cancellation fee, which the complaint alleges is a deceptive trade practice in violation of the ADTPA. The deceptive-trade-practice claim does not depend upon the existence of the programming commitment agreement, or any other agreement or contract. Instead, the claim derives from the defendant's conduct in exacting the fee. Murray paid the early cancellation fee, she alleges, due to DIRECTV's conduct in collecting the fee. The complaint is filed on her behalf for a putative class of persons who also paid the early

cancellation fee.[1] As explained more fully below, her claim is therefore typical of the class claim, and the claim predominates over other individual issues that may arise in this case.

### 1. *Typicality*

The typicality requirement is stated in Rule 23(a): "One or more members of a class may sue or be sued as representative parties on behalf of all only if . . . (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class." Ark. R. Civ. P. 23(a). The typicality requirement is satisfied if the class representative's claim arises from the same wrong allegedly committed against the members of the class. *FirstPlus Home Loan Owner 1997–1 v. Bryant*, 372 Ark. 466, 277 S.W.3d 576 (2008). Thus, a representative's "claim is typical if it arises *from the same event or practice or course of conduct* that gives rise to the claims of other class members, and if [the representative's] claims are based on the same legal theory." *Id.* at 476, 277 S.W.3d at 584 (quoting *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 274, 954 S.W.2d 898, 904 (1997) (citing Herbert B. Newberg, *Newberg on Class Actions* § 3.13, at 166–67 (2d ed.1985))). Moreover, "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met *irrespective of varying fact patterns which underlie individual claims.*" *Id.* at 476, 277 S.W.3d at 584. Thus, when analyzing the factor of typicality, this court focuses upon the defendant's conduct and not on the injuries or damages suffered by the plaintiffs. *Id.*

The circuit court found that Murray's claim was typical of that of the class because "[a]ll claims alleged . . . arise from the alleged overarching scheme to impose Early Cancellation Fees." The circuit court was thus "satisfied that a sufficient relationship exists between the alleged injury to [Murray] and [DIRECTV's] alleged conduct affecting the class to fulfill the requirement of typicality." It is clear to us, as the circuit court found, that the same alleged unlawful conduct of DIRECTV was directed at or affected both Murray and the putative class. The evidence supports the circuit court's determination, and we see no abuse of discretion in the ruling that typicality was satisfied here.

### 2. *Predominance*

Rule 23(b) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Ark. R. Civ. P. 23(b). The starting point in examining the predominance issue is whether a common wrong has been alleged against the defendant. *ChartOne, Inc. v. Raglon*, 373 Ark. 275, 283 S.W.3d 576 (2008). As DIRECTV does not challenge on appeal the commonality requirement, we begin our predominance analysis with the common wrong found by the circuit court that we previously determined allowed Murray to satisfy the typicality requirement—whether DIRECTV's business practices are unfair and deceptive and designed to cause payment of the early cancellation fee by Murray and the class in violation of the ADTPA. One single issue common to the class will satisfy the commonality requirement. *Rosenow*, 2010 Ark. 26, 358 S.W.3d 879.

---

1. The class was defined by the circuit court as "[a]ll Arkansas residents who received DirecTV's satellite television services and paid DirecTV's early cancellation Fee within the past five years immediately preceding the date of the filing of this complaint up through and including the date of judgment in this case."

If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied even if the circuit court must subsequently determine individual damage issues in bifurcated proceedings. *ChartOne,* 373 Ark. 275, 283 S.W.3d 576. We have recognized that a bifurcated process of certifying a class to resolve preliminary, common issues and then decertifying the class to resolve individual issues, such as damages, is consistent with Rule 23. *Id.* Thus, this court has observed that the question becomes whether there are overarching issues that can be addressed before resolving individual issues. *FirstPlus,* 372 Ark. 466, 277 S.W.3d 576.

We acknowledge DIRECTV's arguments that the circuit court never explained how it could conduct a class trial and hear evidence about the programming commitment agreement or the equipment lease addendum, which sets forth the programming commitment agreement, if Murray was not a party to those documents. We also acknowledge DIRECTV's argument that Murray, as a nonparty to the agreements, cannot raise a claim for liquidated damages, nor could she defend the class against DIRECTV's counterclaim for actual damages if the court finds that the agreements contain an invalid liquidated-damages provision. However, it is important to remember that the complaint asserts a claim that the fee is an illegal penalty and a deceptive trade practice, not that the contracts contain an invalid liquidated-damages provision. Moreover, what DIRECTV overlooks in making these arguments is that, because the common wrong alleged here is DIRECTV's deceptive conduct in collecting the fee, whether Murray or any class member is a party to those agreements would be relevant at best only to a defense that collecting the fee is not deceptive because it was disclosed in those agreements.

Our law is now well settled that the mere fact that individual issues and defenses may be raised by the defendant cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members. *Id.* (quoting *The Money Place, LLC v. Barnes,* 349 Ark. 518, 531, 78 S.W.3d 730, 738 (2002)). The fact that a party "may bring affirmative defenses and counterclaims against individual members of the class does not disqualify the case from certification." *Id.* at 483, 277 S.W.3d at 589 (quoting *Johnson's Sales Co. v. Harris,* 370 Ark. 387, 393, 260 S.W.3d 273, 278 (2007)).

We also acknowledge DIRECTV's reliance on *Union Pacific Railroad v. Vickers,* 2009 Ark. 259, 308 S.W.3d 573, and *Arthur v. Zearley,* 320 Ark. 273, 895 S.W.2d 928 (1995), two cases in which this court held that the predominance requirement had not been satisfied due to individual issues. In *Vickers,* the individual issues that defeated the predominance of the common question concerned whether Union Pacific had engaged in the unauthorized practice of law in its individual settlement negotiations with persons who had been in a train accident. In *Zearley,* the individual issues that defeated the predominance requirement concerned whether the medical-professional defendants breached their duty to obtain informed consent from 300 putative class members who had spinal-implant surgery. We do not, however, find those cases dispositive due to dissimilar facts and claims. Rather, the present case is factually more similar to our cases that have upheld a predominance challenge in the context of a deceptive-trade-practices claim for charging a fee, such as *Rosenow,* 2010 Ark. 26, 358 S.W.3d 879; *ChartOne,*

373 Ark. 275, 283 S.W.3d 576; and *Asbury Auto. Group, Inc. v. Palasack,* 366 Ark. 601, 237 S.W.3d 462 (2006).

The circuit court found there to be one set of operative facts concerning DIRECTV's wrongdoing with respect to collecting the fee in violation of the ADTPA that could be tried prior to any individual issues. The circuit court concluded that resolution of the common question would significantly advance this litigation, and therefore the predominance requirement was satisfied. This conclusion is consistent with the evidence and with *Rosenow,* 2010 Ark. 26, 358 S.W.3d 879, which was a case that involved class-certification of a claim that an early termination fee charged by a cell-phone-service provider was a violation of the ADTPA. Accordingly, we find no abuse of discretion in the circuit court's ruling that the predominance requirement was satisfied.

### B. Typicality and Predominance— Murray's Unique Pro Sat Experience

■ DIRECTV argues that Pro Sat's refusal to disclose the programming commitment agreement in accordance with DIRECTV's policies affected Pro Sat customers, but not the Arkansas customers who obtained DIRECTV service from other sources, whether they contacted DIRECTV directly or other retailers such as Bestbuy or Wal–Mart, or even other local Arkansas businesses. In short, DIRECTV claims that Murray's Pro Sat experience was not typical of the class members who received DIRECTV services through any source but Pro Sat. DIRECTV offered affidavits and signed agreements from customers and other installers to support its claim that Murray's Pro Sat experience was atypical in this respect.

The circuit court ruled that this argument from DIRECTV was merits-based and therefore improperly considered as to the issue of whether Murray's claim was typical of the class claim. As we previously explained, the disclosure, or in Pro Sat's context the nondisclosure, of the early cancellation fee is at best relevant to the merits of a defense to the claim of DIRECTV's overarching conduct in collecting an early cancellation fee. In addition, as we also previously explained, this court has recognized that a bifurcated process of certifying a class to resolve preliminary, common issues and then decertifying or dividing the class into subclasses is consistent with Rule 23. *Farmers Union Mut. Ins. Co. v. Robertson,* 2010 Ark. 241, at 17, 370 S.W.3d 179, 189 ("We adhere to our well-settled precedent that allows class actions to be certified first when there are predominating threshold issues of liability common to the class, even though there may be individualized issues that come later requiring either the creation of subclasses or decertification altogether."). Thus, if as the case develops below, the circuit court sees that it would be beneficial to decertify or to create a subclass of Pro Sat customers, that may well occur and be consistent with Rule 23, but that does not defeat class certification at this stage.

It is true that there is no dispute in this case that Pro Sat never informed Murray about DIRECTV's programming commitment agreement or the early cancellation fee when Murray ordered DIRECTV service. Likewise, there is no dispute that Pro Sat did not present Murray with the equipment-lease addendum or the early cancellation fee when it installed Murray's equipment and service. That DIRECTV may well raise the programming commitment agreement or lease addendum, along with their respective terms as to the early cancellation fee, as a defense to the deceptive-trade-practices claim, does not

mean that Murray's deceptive-trade-practices claim does not predominate over the individual issues in this case. Quite simply, Murray's claim is not for breach of contract, but for tortious conduct in collecting a fee in violation of the ADTPA. Her lack of assent to any of DIRECTV's agreements due to her experience with Pro Sat is therefore improperly considered by a court when making the procedural determination of compliance with Rule 23 requirements for class certification of a deceptive-trade-practices claim.

We conclude our analysis of DIRECTV's challenges to the typicality and predominance requirements with the observation that the line between contract and tort is understandably blurred in this case. The circuit court acknowledged this in the order by stating that it

> might be tempted to accept at face value Direc[ ]TV's argument (among many) that this case is not certifiable because the circumstances relating to the class representative are unique to her and that each monetary claim would also be unique to each class member. With a sharper focus, however, it is obvious that [Murray's] main allegation about the alleged fraudulent scheme centers upon whether or not the Early Cancellation Fee is valid under Arkansas law and whether or not Direc[ ]TV's actions in imposing and coercing payment of its Early Cancellation Fee is a violation of the ADTPA. Direc[ ]TV's various objections to class certification amount to nothing more than merits arguments regarding liability and individual damages issues with marginal relevance to class certification issues.

Given this careful consideration by the circuit court, and given Arkansas law that it is permissible to first certify a class and then later decertify it or create subclasses if individual issues so suggest, we cannot say the circuit court abused its discretion in ruling that Rule 23's requirements for typicality and predominance were satisfied.

## C. Numerosity—Most if Not All Class Members Agreed to Arbitration

DIRECTV argues that, "even if Murray's claims are somehow suited to class treatment, class certification would still be inappropriate because the class members uniformly agreed to arbitrate their disputes with DIRECTV." DIRECTV cites us to cases from other jurisdictions holding that numerosity may be defeated where most or all proposed class members have agreed to arbitrate their disputes. *See, e.g., Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir.1987).

We need not determine whether to adopt the reasoning of this persuasive authority, however. It is important to remember that no class notice has yet been sent in this case, and there are no known, identified class members. Thus, because DIRECTV's motion to compel arbitration was filed with respect to Murray only and not to the putative class members, our consideration of whether any putative class members agreed to arbitrate their claims would be inappropriate and advisory at this stage. Moreover, this court has indicated that waiver, specifically in the context of an arbitration provision containing a waiver of the right to pursue class-action relief, is a defense that is not properly considered in determining the procedural issue of whether the Rule 23 factors are satisfied. *See USA Check Cashers of Little Rock, Inc. v. Island,* 349 Ark. 71, 76 S.W.3d 243 (2002). Accordingly, we do not address the arbitration issue any further on appeal.

## D. Superiority—Attorney General Settlement Agreement

DIRECTV argues that because the Arkansas Attorney General already negotiated for the class the same relief sought in this case for the same conduct, the circuit

court erred in finding that a class action is the superior method for resolving this suit. Murray responds that, although DIRECTV raised this argument to the circuit court, there is no ruling on this argument anywhere in the order appealed. DIRECTV replies that a ruling on this issue is included within the circuit court's ruling that "Plaintiffs have satisfied the Rule 23(b) requirement of superiority."

We are precluded from reaching this argument because to do so would require us to make findings of fact that the circuit court simply did not make, such as whether the classes are indeed the same and whether the relief granted is the same as the relief here sought. In other words, this argument, as advanced by DIRECTV, presumes that the Attorney General's settlement obtained the same relief for the same class as sought by Murray in this case, but there have been no such findings of fact entered by the circuit court. As the appellant, it was DIRECTV's burden to obtain a ruling on this specific argument, and its failure to do so precludes our review of this argument on appeal. *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, 422 S.W.3d 116.

For the aforementioned reasons, we find no merit to DIRECTV's arguments for reversal of the class-certification order. We therefore affirm the circuit court's order granting class certification pursuant to Rule 23.

HANNAH, C.J., and Special Justice MICHAEL O. PARKER dissent.

GUNTER, J., not participating.

HANNAH, C.J., dissenting.

I respectfully dissent. Murray fails as a class representative because she is not contractually obligated to arbitrate her claims against DIRECTV, and because it appears that virtually every other putative class member may be obligated to arbitrate his or her claims.

A decision on class certification cannot be reached in this case without first deciding whether the other putative class members are under an obligation to arbitrate. Whether or not DIRECTV filed a motion to compel arbitration with regard to Murray or other putative class members is irrelevant. The analysis would be the same even if no motion to compel arbitration had been filed. At issue is Murray's propriety as a class representative of her proposed class which requires comparison of her claims and status to those of the class she proposes to represent. She is under no obligation to arbitrate, so her claims of improper or illegal early cancellation fees will be tried in court. That does not appear to be so with the putative class members. Murray's class could be composed of those who were charged early cancellation fees but who are not obligated to arbitrate because they were not provided with the agreements upon installation and who cancelled within such a short time. It could be a very small class, likely a class of one.

The decision to arbitrate is a choice of legal forum. As such, the question of whether there is a duty to arbitrate presents a threshold issue of whether there is jurisdiction in the courts. It is not a defense to be considered after jurisdiction has been determined. "An agreement to arbitrate is not a defense to an action." *Allied Bldg. Inspectors Int'l Union of Operating Eng'rs, Local Union 211, AFL-CIO v. Office of Labor of City of N.Y.*, 45 N.Y.2d 735, 408 N.Y.S.2d 476, 380 N.E.2d 303, 305 (1978); *see also C & M 345 N. Main St., LLC v. Nikko Constr. Corp.*, 96 A.D.3d 794, 946 N.Y.S.2d 241, 242 (2012) ("[A]n agreement to submit a dispute to mediation and arbitration is not a defense to an action, and, thus, may not be the basis for a motion to dismiss."). A motion to dismiss may not be based on arbitration alone because arbitration is not a defense to an action. In *USA Check Cashers of*

*Little Rock, Inc. v. Island,* 349 Ark. 71, 78–79, 76 S.W.3d 243, 246–47 (2002), USA asserted that the defense of waiver based on an agreement to arbitrate precluded class certification. USA raised the issue of the defense of waiver as opposed to forum choice. In discussing *Island,* the majority errs to the extent it holds arbitration may not be considered in the context of deciding jurisdiction. If arbitration removes the dispute from jurisdiction in the courts, obviously there can be no class.

Arbitration is a forum selection made by contracting parties. Whomever is selected by the parties to serve as arbitrator in their contract is "clothed with jurisdiction of the subject matter." *Wayte v. Wayte,* 40 Ark. 163, 166 (1882). Arbitration is a matter of contract between the parties whereby they agree that a dispute should be submitted to arbitration. *See Tyson Foods, Inc. v. Archer,* 356 Ark. 136, 141, 147 S.W.3d 681, 684 (2004). The preliminary issue is whether there is a valid contract to arbitrate. *Showmethemoney Check Cashers, Inc. v. Williams,* 342 Ark. 112, 119, 27 S.W.3d 361, 365–66 (2000). If arbitration has been chosen, jurisdiction to decide the issues lies in that forum.

The majority errs in failing to decide the arbitration issue. It is a threshold jurisdictional issue that must be decided before defenses are even considered. The facts make abundantly clear that Murray may be the only person who is not subject to the consumer agreement as a consequence of nondelivery of the agreement and almost immediate cancellation. She fails to qualify as a class representative.

Therefore, I dissent.

Special Justice MICHAEL O. PARKER joins in this dissent.