SLIP OPINION

Cite as 2015 Ark. 275

# SUPREME COURT OF ARKANSAS

No. CV–14–1011

| | |
|---|---|
| ARKANSAS DEPARTMENT OF VETERANS AFFAIRS D/B/A ARKANSAS VETERANS HOME AND FAYETTEVILLE VETERANS HOME<br><br>APPELLANT<br><br>V.<br><br>DARLENE OKEKE ET AL.<br>APPELLEES | **Opinion Delivered** June 18, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRD DIVISION<br>[NO. 60CV-13-2403]<br><br>HONORABLE CHRIS PALMER, JUDGE<br><br>AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

This is an appeal from the Pulaski County Circuit Court's order granting class certification to appellees in their case alleging violations of the Arkansas Minimum Wage Act (AMWA), Arkansas Code Annotated sections 11-4-201 et seq. Appellant, the Arkansas Department of Veterans Affairs (ADVA), d/b/a Arkansas Veterans Home and Fayetteville Veterans Home, argues that the circuit court abused its discretion in certifying the class. Specifically, ADVA challenges the circuit court's findings regarding the requirements of commonality, predominance, and superiority. An interlocutory appeal may be taken from an order certifying a case as a class action in accordance with Arkansas Rule of Civil Procedure 23. *See* Ark. R. App. P.–Civ. 2(a)(9) (2014). We affirm.

SLIP OPINION

*Background*

Appellees, plaintiffs below, are Registered Nurses (RNs), Licensed Practical Nurses (LPNs), and Certified Nursing Assistants (CNAs) who worked for Arkansas Veterans Home in Little Rock and Fayetteville Veterans Home as hourly employees. They filed this complaint alleging violations of the AMWA for failing to pay them for all overtime hours worked, and they sought class certification.[1] Specifically, in their third amended complaint, appellees alleged that (1) ADVA automatically deducted thirty minutes per day from their hours worked to account for lunch breaks, even though they were regularly required to work during their lunch breaks (meal-break claims); and (2) ADVA required them to work before and after their shifts, in order to complete their job duties, without compensation (pre- and post-shift claims). They alleged that they frequently had to work through lunch due to understaffing and that they had to work off the clock to complete their job duties. Appellees alleged that they were not allowed to report all overtime hours worked and that they frequently complained to ADVA about these violations but nothing was done as a result of these complaints. In its answer, ADVA denied the allegations and denied that appellees were entitled to class status.[2]

---

[1] Prior to the filing of the third amended complaint, the circuit court granted ADVA additional time to respond to a pending motion for class certification. After depositions were taken, three plaintiffs, Francis Philip, Sandra Stewart, and Patricia Burton, were voluntarily dismissed from the case pursuant to Ark. R. Civ. P. 41(a). Stewart and Burton dismissed their claims because it was determined that they did not work more than forty hours in a given week and therefore had no overtime claims.

[2] ADVA also noted the circuit court's prior order granting ADVA's motion for partial judgment on the pleadings with regard to claims for "straight-time" compensation.

A few days after the third amended complaint had been filed, appellees filed their amended and substituted motion for class certification under Arkansas Rule of Civil Procedure 23. Appellees alleged that the proposed class size was unknown but was over 100 individuals, and was likely hundreds, making joinder impractical; the claims of plaintiffs and the putative class present numerous common questions of law and fact; plaintiffs' claims are typical because the same unlawful conduct was directed both at them and at the putative class; both the representative parties and their counsel will fairly and adequately protect the interest of the class; the predominant issues in this litigation are whether ADVA's employees are entitled to compensation for all hours worked including work performed during meal breaks and work performed off-the-clock; and because this case requires resolution of common issues and involves a large number of relatively small claims, a class action is the superior method to adjudicate the controversy.  They alleged several issues common to the proposed class:

> Defendants have a common policy of understaffing their facilities, which ultimately requires employees who work in patient care to work through their lunches and off-the-clock in order to finish their required duties. The Named Plaintiffs and putative class members' supervisors knew that they were working through their meal breaks and working off-the-clock, but failed to compensate them for this time. These policies, combined with the fact that ADVA auto-deducted thirty minutes from its employees' pay for untaken lunch breaks, caused Named Plaintiffs and the putative class members to not receive their required compensation.

ADVA filed a response opposing the motion for class certification.

---

The circuit court held that the AMWA does not create a cause of action for straight-time compensation and therefore the plaintiffs could only maintain an action for unpaid or underpaid *overtime* compensation.

SLIP OPINION

On June 9, 2014, the circuit court held a hearing on the class–certification motion. In addition to the parties presenting argument, ADVA called several witnesses who were current or former nurses or CNAs for ADVA. Their testimony can generally be summarized to say that those employees had not been required to work overtime without compensation. The order granting class certification was entered on August 21, 2014, and the circuit court held that common factual and legal issues included the following:

- Whether ADVA's policy of automatically deducting 30 minutes from hours worked by employee was illegal;

- Whether plaintiffs and putative class members worked through their meal breaks;

- Whether ADVA had a policy of allowing its employees to reclaim hours worked during their meal breaks;

- Whether ADVA had a policy of allowing its employees to reclaim hours worked off-the-clock;

- Whether plaintiffs and putative class members worked overtime;

- Whether plaintiffs and putative class members worked off-the-clock; and

- Whether ADVA failed to compensate its employees for all overtime hours worked.

The class is defined as "[a]ll hourly, nonexempt nurses and certified nursing assistants of Arkansas Veterans Home and Fayetteville Veterans Home who were employed by ADVA at any time within the three years prior to the filing of this case through the date of the final disposition of this action."

SLIP OPINION

*Standard of review*

This court has set out the standard of review on appeal from the certification of a class as follows:

> The determination that the class-certification criteria have been satisfied is a matter within the broad discretion of the trial court, and this court will not reverse the trial court's decision absent an abuse of that discretion. *ChartOne, Inc. v. Raglon*, 373 Ark. 275, 283 S.W.3d 576 (2008). In reviewing a class-certification order, this court focuses on the evidence in the record to determine whether it supports the trial court's conclusion regarding certification. *Id*. Neither the trial court nor this court shall delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met. *Id*. In this regard, "'a trial court may not consider whether the plaintiffs will ultimately prevail, or even whether they have a cause of action.'" *Bryant*, 374 Ark. at 42, 285 S.W.3d at 638 (quoting *Carquest of Hot Springs, Inc. v. Gen. Parts, Inc.*, 367 Ark. 218, 223, 238 S.W.3d 916, 920 (2006)). We view the propriety of a class action as a procedural question. *See id*.

*Baptist Health v. Hutson*, 2011 Ark. 210, at 4, 382 S.W.3d 662, 666.

*Class Certification and the AMWA*

Subject to certain exceptions not applicable here, the AMWA provides with regard to overtime that "no employer shall employ any of his or her employees for a work week longer than forty (40) hours unless the employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half (1 1/2) times the regular rate of pay at which he or she is employed." Ark. Code Ann. § 11-4-211(a) (Repl. 2012). "In lieu of overtime compensation, the State of Arkansas and any political subdivision of the state may award compensatory time off at a rate of not less than one and one-half (1 1/2) hours for each hour of employment for which overtime compensation is required." Ark. Code Ann. § 11-4-211(f).

Some discussion of the AMWA and the Federal Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq. is necessary here, given the extent to which the parties cite federal case law. Like the AMWA, the FLSA generally requires employers to pay their employees at least one and one-half times their regular wage rate for hours worked in excess of forty hours in a given week. 29 U.S.C. § 207(a)(1). The AMWA appears to impose the same overtime requirements as the FLSA. *Helmert v. Butterball, LLC*, 805 F. Supp. 2d 655, 663 (E.D. Ark. 2011). Furthermore, the Arkansas Department of Labor "may rely on the interpretations of the U.S. Department of Labor and federal precedent established under the Fair Labor Standards Act in interpreting and applying the provisions of [the Arkansas Minimum Wage Act] . . . except to the extent a different interpretation is clearly required." Ark. Code R. § 112 (Weil 2010). However, it should be noted that the FLSA provides for collective actions, which have an entirely different procedure from Rule 23 class certification.[3] And in any event, unlike the federal courts, this court does not require that the circuit court conduct a "rigorous analysis" under Arkansas Rule of Civil Procedure 23. *Beverly Enterprises-Arkansas, Inc. v. Thomas*, 370 Ark. 310, 322, 259 S.W.3d 445, 453 (2007) (citing *Tay-Tay, Inc. v. Young*, 349 Ark. 675, 683, 80 S.W.3d 365, 368 (2002)).

---

[3]The FLSA provides that any one or more employees may maintain an action to recover the liability prescribed in the section against any employer on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike Federal Rule of Civil Procedure 23, a collective action maintained under the FLSA is pursued as an opt-in class. *See generally Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937 (W.D. Ark. 2007) (discussing collective action certification under the FLSA).

The six requirements for class-action certification as stated in Rule 23 of the Arkansas Rules of Civil Procedure are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *Diamante, LLC v. Dye*, 2013 Ark. 501, at 2, 430 S.W.3d 710, 714. In the present case, ADVA challenges the circuit court's findings as to commonality, predominance, and superiority, and those requirements will be addressed in turn.[4]

### *Commonality*

Rule 23(a)(2) requires the circuit court to make a determination that "there are questions of law or fact common to the class." The rule does not require that all questions of law or fact be common, but rather the standard is that there need be only a single issue common to all members of the class. *Johnson's Sales Co. v. Harris*, 370 Ark. 387, 391, 260 S.W.3d 273, 276 (2007).

ADVA first argues that claims that involve individual applications of an employer's time reclamation policy are inherently uncommon. ADVA relies on *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012), as well as two federal district court cases and a U.S. Department of Labor Fact Sheet, for the proposition that automatic deductions for meal breaks are not per se unlawful. ADVA then reasons that the issue to be decided at trial is whether it has applied its automatic-deduction and reclamation policy to each particular employee in a way that makes it possible for the employee to reclaim the extra time—an

---

[4]This court need not address class certification requirements not challenged on appeal. *E.g.*, *Union Pac. R.R. v. Vickers*, 2009 Ark. 259, at 6 n. 3, 308 S.W.3d 573, 577.

inherently individualized inquiry ill-suited to a class action, according to the ADVA. While it may be true that automatic deductions for meal breaks are not per se unlawful, it does not necessarily follow that they are per se lawful. We do not get into the merits of the case at the certification stage.

Regarding the propriety of collective treatment of claims such as appellees', ADVA states that no Arkansas appellate case has addressed the issue but cites several federal cases that it claims are directly on point. In *White*, the Court of Appeals for the Sixth Circuit cited *Hill v. United States*, 751 F.2d 810 (6th Cir. 1984), for the proposition that "[a]n automatic meal deduction system is lawful under the FLSA." *White*, 699 F.3d at 873. The issue in the *White* case was not the lawfulness of the automatic deduction of time for meals; rather, the court affirmed the grant of summary judgment for the employer because it had established a system to compensate its workers for time worked during meal breaks and there was no evidence that employees were prevented from utilizing the system to report missed meal breaks. ADVA cites several federal district court cases for the proposition that collective treatment of claims under the AMWA and the FLSA is improper because such claims "inherently entail highly individualized inquiries that necessitate individual trials." Appellees cite federal district court cases in which conditional certification has been granted for missed meal break claims and pre- and post-shift claims under the FLSA. We find these cases to be of negligible value in the present case due to the differing standards for collective actions under the FLSA and the rigorous analysis applied by federal courts to Rule 23 class certification.

ADVA attempts to characterize the issue of commonality as "whether an employer has applied such a policy to a particular employee in a way that make it possible for [the] employee to reclaim the extra time." Based on the above, we agree with appellees that there are actually two central questions: whether ADVA's time reclamation policy is reasonable (liability) and whether each plaintiff or potential plaintiff followed the policy (damages). The circuit court found that the question of whether ADVA's lunch auto-deduct policy is illegal and whether ADVA's time reclamation policy is reasonable can be determined on a classwide basis and is common for all putative class members. We hold that the circuit court did not abuse its discretion on this point and affirm.

*Predominance*

Rule 23(b) provides that common questions of law and fact must predominate over any questions affecting only individual members. The predominance requirement is more stringent than the commonality requirement. *Rosenow v. Alltel Corp.*, 2010 Ark. 26, at 10, 358 S.W.3d 879, 886. The standard for testing predominance has been set out as follows:

> When deciding whether common questions predominate over other questions affecting only individual members, this court does not merely compare the number of individual versus common claims. Rather, this court decides if the preliminary, overarching issues common to all class members "predominate over" the individual issues, which can be resolved during the decertified stage of a bifurcated proceeding. Thus, the mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members.

*Rosenow*, 2010 Ark. 26, at 10, 358 S.W.3d at 886–87 (quoting *Vickers*, at 9, 308 S.W.3d at 578–79 (citations omitted)). This court has further said that if a case involves preliminary

issues common to all class members, predominance is satisfied even if the court must subsequently decertify a class due to individualized damages. *Rosenow*, 2010 Ark. 26, at 10, 358 S.W.3d at 887.

Here, ADVA argues that the evidence shows that individual issues predominate over any common issues. It cites *Union Pac. R.R. v. Vickers*, 2009 Ark. 259, 308 S.W.3d 573, in which this court reversed the grant of class certification in a case involving settlements with the railroad company that plaintiffs alleged had involved deceptive trade practices and the unauthorized practice of law, holding that there was no one set of operative facts that established Union Pacific's liability to any given class member. This court distinguished cases in which it was undisputed that the defendant had engaged in a uniform practice. ADVA asserts that it is highly disputed in the present case whether ADVA engaged in a uniform practice. ADVA argues that the plaintiffs and putative class members must prove five elements to establish their claims under the AMWA, citing *White v. Baptist Mem. Health Care Corp., supra*. It cites no Arkansas law for this proposition, however. Again, ADVA argues that because some employees did get compensated for their overtime individual determinations predominate.

Whether ADVA has a reasonable reclamation process for claiming overtime—missed lunch breaks that were automatically deducted and pre- and post-shift work—is a question that predominates over individual issues, which primarily go to damages. Even if some nurses and CNAs did not work through their lunch breaks, they are members of the class because they were subject to ADVA's allegedly illegal policy of automatically deducting hours

worked—any determination of whether class members suffered damages goes to the merits, which is not appropriate at the class certification stage. Accordingly, we hold that the circuit court did not abuse its discretion in holding that the predominance requirement had been met.

*Superiority*

The superiority requirement is about efficiency. This court has repeatedly held that the superiority requirement is satisfied if class certification is the more efficient way of handling the case, and it is fair to both sides. *FirstPlus Home Loan Owner 1997-1 v. Bryant*, 372 Ark. 466, 484, 277 S.W.3d 576, 589–90 (2008). Real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *Id.* Whether common questions of law or fact predominate and whether a class action is a superior method of deciding the case are, to a degree, necessarily subjective questions and very much related to the broad discretion conferred on a trial court faced with them. *Summons v. Missouri Pac. R.R.*, 306 Ark. 116, 122, 813 S.W.2d 240, 243 (1991).

Here, ADVA argues that a class-wide trial would be unfair to the defense because due process requires that it be afforded the opportunity to cross-examine each class member and introduce and explain specific documentary evidence regarding each person. Therefore, ADVA contends that "such an unwieldy procedure is unworkable in a single proceeding, and this case should not proceed as a class action." However, the circuit court found that the superiority requirement had been met, and we see no abuse of discretion in that finding.

11

Certainly, ADVA should be permitted to defend as it sees fit, and the question is really more about how best to manage the case, something that the circuit court has broad discretion to determine. We note that the class can be decertified after common questions have been litigated, if the circuit court decides it is appropriate to do so. *E.g.*, *Philip Morris Companies, Inc. v. Miner*, 2015 Ark. 73, at 11–12 ("[T]o the extent that causation and reliance require individual inquiries, the circuit court can decertify the class in a bifurcated proceeding.").

*Conclusion*

Because the circuit court did not abuse its discretion in certifying the class, we affirm the circuit court's order.

Affirmed.

BAKER, HART and WOOD, JJ., dissent.

**RHONDA K. WOOD, Justice, dissenting.** Class certification is proper only when the court can determine that there are questions of law or fact that are common to the putative class. *Union Pac. R.R. v. Vickers*, 2009 Ark. 259, 308 S.W.3d 573. We will reverse a class certification when there is no one set of operative facts that establishes liability. *Id.* Because there are seemingly as many different questions and sets of operative facts presented in this case as there are class members, I cannot join the majority's opinion. When a case turns on highly individualized inquiries that differ from class member to class member, as in this one, our precedent has been to hold that the class-certification requirements are not satisfied. *See id.*; *Williamson v. Sanofi Winthrop Pharm., Inc.*, 347 Ark. 89, 60 S.W.3d 428 (2001); *Baker v. Wyeth-Ayerst Labs.*, 338 Ark. 242, 992 S.W.2d 797 (1999). I believe that the present case

is governed by those just cited, and the principles enunciated therein compel a conclusion that the circuit court abused its discretion by certifying this case as a class action. Therefore, I must respectfully dissent.

The plaintiffs in this case presented extensive testimony concerning the working conditions and compensation at the Arkansas Department of Veterans Affairs (ADVA). The testimony ran the gamut from plaintiffs who rarely worked through their lunch break to others who claimed to have worked through lunch virtually every single day. Testimony regarding ADVA's time-reclamation policy, which enabled workers to get paid for missed lunches, was equally as varied among the plaintiffs, with some having never heard of the policy, some believing it did not apply to missed meal breaks, some claiming they were never told the forms could be used for missed lunches, and still others testifying that their supervisors claimed to have filled out the forms for them. The plaintiffs provided similar testimony about reclaiming time when they were asked to work "off the clock" before and after shifts. They all generally testified that working additional time was very common, but some testified they were told there was no way to get paid for that time because there were no funds available for overtime, some testified they would be reprimanded for reporting overtime, still others testified that they were told to fill out the comp forms for that time but that the forms were not processed, and some testified that there was simply no way to report extra time worked at all.

ADVA, on the other hand, produced testimony that contrasted sharply with that of the plaintiffs. ADVA's witnesses testified that it was incredibly rare to work through lunches and

that they had never been asked to work any time that was not fully compensated. Unlike the plaintiffs, these witnesses testified to a well-known comp-form policy, whereby they were encouraged to report any off-the-clock time by submitting the comp form so that they could be properly paid for that time. The witnesses testified that the procedure for submitting comp forms was explained thoroughly during orientation or thereafter by supervisors and human-resources personnel and that they were familiar with the forms and the procedure, what they covered, and how they were to be used. These witnesses testified to routinely utilizing comp forms to ensure that they were properly compensated for all time worked and that other employees they knew did the same.

From these sundry accounts, and in order to justify class certification, the circuit court fishes out the "common" questions of whether ADVA's lunch auto-deduct policy is illegal and whether ADVA's time-reclamation policy is reasonable. However, it is apparent from the testimony that the only thing in common about ADVA's *policies* is that they were plural and that they were applied differently to each ADVA employee and each employee's knowledge and understanding of the policies varied from person to person.

In discussing commonality, we have explained that we look for scenarios in which "the defendant's act, independent of any action by the class members, established a common question relating to the entire class to certify the matter as a class action." *Williamson*, 347 Ark. at 97, 60 S.W.3d at 433. As it was in *Williamson*, it is likewise impossible to find such a scenario in this case because the understanding of ADVA's policies differs wildly from person

to person and turns on each individual's knowledge of the policy and what he or she was told about it.

In *Williamson*, a class of sales reps alleged that they were wrongfully denied bonuses under an incentive program. The program guaranteed bonuses to reps who met certain *regional* sales standards; however, throughout the year, the employer inadvertently sent update reports to the reps with sales numbers that were compared to *national* standards. The national standards were more lax than the regional standards, and the reports led the reps to believe that they would qualify for the bonus even though they were not meeting the higher regional standards. Williamson brought a breach of contract claim and moved to certify a class of reps who had been denied the bonus. The circuit court denied certification, reasoning that there was no common question among the class members "because each member may have had a different understanding of the incentive program or may have known that the reported numbers were in error." *Id*. at 93–94, 60 S.W.3d at 430. This court affirmed and pointed out that the plaintiffs had all been given varying documents concerning the incentive plan, some of which contradicted one another. *Id*. at 100, 60 S.W.3d at 435. We also noted that there had been oral representations about the plan that may or may not have been made to all class members; therefore, "whether and what terms might have existed and on which terms and representations each class member relied [was] an individual fact question that is not common to each member of [the] potential class." *Id*., 60 S.W.3d at 435.

We were presented with a similar factual situation in *Vickers*. The plaintiffs had alleged that Union Pacific had a policy and practice of approaching people injured by Union Pacific

and inducing them to settle by discouraging them from seeking an attorney, making misrepresentations to them, and concealing information from the plaintiffs that Union Pacific had a duty to disclose. The circuit court found the following common questions: whether Union Pacific prepared legal documents and instruments; whether it advised plaintiffs of their rights; whether it engaged in the unauthorized practice of law; and whether it engaged in deceptive trade practices. *Vickers*, 2009 Ark. 259, at 5–6, 308 S.W.3d at 576. We reversed certification, explaining that Union Pacific's interaction with each plaintiff differed. *Id*. at 18, 308 S.W.3d at 582. We noted that the documents that were prepared by Union Pacific varied from plaintiff to plaintiff and any representations made by Union Pacific necessarily depended on individualized oral representations made by specific Union Pacific representatives. *Id.*, 308 S.W.3d at 576.

In both cases, there was no single set of operative facts or conduct by the defendant that could establish liability. Each potential plaintiff's claim turned on the individualized interactions between plaintiff and defendant, and liability could only ever be established as to a single claimant at a time by examining the defendant's conduct as to that individual—a task not well suited to class litigation. Such is the case here. There is no common question as to ADVA's policies that can be determined on a class-wide basis because it is the *individual application* of those policies to specific plaintiffs that has been placed at issue in this case. As the disparate testimony illustrates, the plaintiffs testified as to multiple policies that seemed to have been *applied* differently to each class member, and each member's understanding of the policies seemingly varies based on a host of individualized issues. Like in *Williamson* and *Vickers*, the

SLIP OPINION

training on the policies and the procedure for submitting the comp forms varied based on who conducted the training or orientation and who processed the comp form. Oral representations about the comp forms and ability to reclaim time seemingly varied from supervisor to supervisor and even shift to shift and, as demonstrated by the testimony, are different from plaintiff to plaintiff. The questions in this case are not really common to all class members, but like in *Williamson* and *Vickers*, each plaintiff's claim depends on an individualized inquiry into how ADVA interacted with that plaintiff. Whether ADVA's policies were illegal or reasonable necessarily depends on which policy, because the plaintiffs testified as to varied time-reclamation policies, applied to each individual claimant, as it is clear that not all class members were prevented from receiving proper compensation under the policies, as alleged by the plaintiffs.

By painting with the broadest possible brush, the majority frames the question as whether ADVA's policy, apparently getting to the merits and finding there was a singular policy, itself was legal and, thus, characterizes the question as one common to all class members—disregarding ADVA's examples of different individual treatment under different policies, which belies the propriety of class certification. In contrast, we recently certified a class of plaintiffs in *Philip Morris Cos., Inc. v. Miner*, 2015 Ark. 73, ___ S.W.3d ___. Unlike this case, there was a unified question, equally applicable to all class members, regarding the conduct of Philip Morris, i.e., whether Philip Morris misrepresented the characteristics of its Lights cigarettes. This question was wholly dependent on Philip Morris's actions in manufacturing and marketing its cigarettes and could be answered independently of any

17

inquiry into the behavior of individual class members. In the current case, we cannot simply ask whether ADVA's policies were legal in the abstract. Unlike Philip Morris's marketing message, which was the same as to all class members, it is unclear at this point what ADVA's policies were and yet very clear that any policy was not applied consistently to each class member, making the operative question to be answered in each instance, "Was ADVA's particular policy that was applied to plaintiff X applied in such a way that it violated the Arkansas Minimum Wage Act (AMWA)?" This is an individualized question which turns on an examination of the facts and circumstances of each plaintiff.

In *Baker*, we affirmed denial of class certification because the case presented "numerous individual issues that go to the heart of the defendants' conduct . . . such that the defendants' liability as to each plaintiff will have to be resolved on a case-by-case basis." 338 Ark. at 249, 992 S.W.2d at 801. Similarly, ADVA's liability to any specific plaintiff under AMWA can only be established on a case-by-case basis by examining (1) whether a plaintiff worked in excess of forty hours to begin with; (2) whether the plaintiff worked hours in excess of forty that were not reflected on the plaintiff's time sheet because of ADVA's automatic lunch deduction or because of compulsory off-the-clock work; and (3) whether the plaintiff was or was not properly compensated for those excess hours after submitting a comp form, i.e., whether ADVA's auto-deduct policy was legal and its time-reclamation policies were reasonable. The individualized nature of the inquiry is underscored by the fact that the plaintiffs have already had to nonsuit two individuals after discovering they had not worked over forty hours and could not, under any set of circumstances, establish liability under

AMWA as to those individuals. Such is this whole case, and the same individualized inquiries that resulted in the nonsuit will have to be answered as to each plaintiff, making class litigation unwieldy, inefficient, and inappropriate under our class–certification requirements. Therefore, I respectfully dissent.

BAKER and HART, JJ., join.

*Leslie Rutledge*, Att'y Gen., by: *David A. Curran*, Deputy Att'y Gen., and *Amber R. Schubert*, Ass't Att'y Gen., for appellant., Ass't Att'y Gen., for appellee.

*Holleman & Associates, P.A.*, by: *John Holleman*, *Maryna O. Jackson*, and *Matthew Ford*, for appellees.