SLIP OPINION

Cite as 2015 Ark. 428

# SUPREME COURT OF ARKANSAS

No. CV-15-243

| | |
|---|---|
| ARKANSAS DEPARTMENT OF VETERANS AFFAIRS D/B/A ARKANSAS VETERANS HOME AND FAYETTEVILLE VETERANS HOME<br>APPELLANT | **Opinion Delivered** November 19, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-14-595] |
| V. | HONORABLE WENDELL LEE GRIFFEN, JUDGE |
| DIANE MALLETT ET AL.<br>APPELLEES | <u>REVERSED AND REMANDED WITH INSTRUCTIONS TO DECERTIFY THE CLASS</u>. |

**KAREN R. BAKER, Associate Justice**

Appellant, Arkansas Department of Veterans Affairs d/b/a Arkansas Veterans Home and Fayetteville Veterans Home ("ADVA") appeals the Pulaski County Circuit Court's order granting class certification to appellees in their case alleging violations of the Arkansas Minimum Wage Act ("AMWA"), Arkansas Code Annotated sections 11-4-201 et seq. On appeal, ADVA argues that the circuit court abused its discretion in certifying the class.

Appellees are hourly, nonnursing employees of ADVA ("employees"). The employees sought class certification alleging that ADVA violated the AMWA due to ADVA's failure to pay the employees for overtime hours worked. Specifically, the employees allege that ADVA automatically deducted thirty minutes per day from their hours worked to account for meal breaks, even though they were regularly required to work during their meal breaks. The employees also sought certification to resolve the issues of unpaid time worked during pre-

and post-shift hours. The employees sought to represent approximately 150 individuals who held one of twenty different nonnursing positions.

On November 25, 2014, the circuit court entered its order granting class certification regarding meal breaks. The circuit court determined that the common question as to the class members was "Whether Defendant's systematic and automated practice of deducting meal breaks is a violation of the AMWA[.]" The circuit court found that class certification was inappropriate as to pre- and post-shift-work claims. The circuit court stated that "[i]n contrast to the automated meal break deductions, Plaintiffs fall short of demonstrating a policy, scheme, or uniform practice that allegedly deprived Plaintiffs of compensation for work performed off-the-clock." On December 23, 2014, ADVA filed a timely notice of appeal.

We recognize our precedent in the companion case of *Arkansas Department of Veterans Affairs v. Okeke*, 2015 Ark. 275, 466 S.W.3d 399. This court held that the circuit court acted within its discretion in finding that the commonality, predominance, and superiority requirements had been met. *Id.* Accordingly, we held that the circuit court did not abuse its discretion in certifying the class and affirmed the circuit court's order. *Id.* However, as will be explained below, we note a marked distinction between the present case and *Okeke*.

I. *Standard of Review*

An interlocutory appeal may be taken from an order certifying a case as a class action in accordance with Arkansas Rule of Civil Procedure 23. Circuit courts are given broad discretion in matters regarding class certification; we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *ChartOne, Inc. v. Raglon*, 373

SLIP OPINION

Ark. 275, 283 S.W.3d 576 (2008). When reviewing a circuit court's class-certification order, this court reviews the evidence contained in the record to determine whether it supports the circuit court's decision. *Teris, LLC v. Golliher*, 371 Ark. 369, 266 S.W.3d 730 (2007). Our focus is "whether the requirements of Rule 23 are met," and "it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action." *Philip Morris Cos. v. Miner*, 2015 Ark. 73, at 3, 462 S.W.3d 313, 316 (quoting *Am. Abstract & Title Co. v. Rice*, 358 Ark. 1, 9, 186 S.W.3d 705, 710 (2004)).

## II. *AMWA*

The AMWA provides that "no employer shall employ any of his or her employees for a work week longer than forty (40) hours unless the employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half (1 1/2) times the regular rate of pay at which he or she is employed." Ark. Code Ann. § 11-4-211(a) (Repl. 2012). "In lieu of overtime compensation, the State of Arkansas and any political subdivision of the state may award compensatory time off at a rate of not less than one and one-half (1 1/2) hours for each hour of employment for which overtime compensation is required." Ark. Code Ann. § 11-4-211(f).

## III. *Class Certification*

On appeal, ADVA argues that the circuit court abused its discretion in finding that the employees have met their burden of proving commonality, predominance, and superiority. ADVA contends that automatically deducting thirty minutes a day for meal breaks is not per se unlawful. Because this policy is not per se unlawful, it must be coupled with two

SLIP OPINION

conditions: (1) the employee was required to work through his or her meal break without compensation; and (2) working through the meal break caused the employee to work more than forty hours in a work week. ADVA further argues that collective treatment of the employees' claims is improper because the claims inherently entail highly individualized inquiries.

Rule 23 of the Arkansas Rules of Civil Procedure governs class actions and class certification. The rule provides, in pertinent part:

> (a) Prerequisites to Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Therefore, there are six requirements for class-action certification, as stated in Rule 23: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *Gen. Motors Corp. v. Bryant*, 374 Ark. 38, 285 S.W.3d 634 (2008). In addition to the requirements of Rule 23, the court must be able to objectively identify members of the class. *Farmers Ins. Co. v. Snowden*, 366 Ark. 138, 233 S.W.3d 664 (2006).

We now turn to the requirements of class certification. To certify a class, the circuit court must determine that "there are questions of law or fact common to the class." Ark. R. Civ. P. 23(a)(2). The commonality requirement is always case specific and

Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the rule 23(a)(2) prerequisite is . . . that there need be only a single issue common to all members of the class . . . When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.

*Union Pac. R.R. v. Vickers*, 2009 Ark. 259 at 8–9, 308 S.W.3d 573, 578 (quoting Herbert B. Newberg, *Newberg on Class Actions* § 3.10 (3d ed. 1993)). The circuit court "must determine what elements in a cause of action are common questions for the purpose of certifying a class," and commonality is satisfied where "the defendant's acts, independent of any action by the class members, establish a common question relating to the entire class." *Id*. at 9, 308 S.W.3d. at 578 (quoting *Williamson v. Sanofi Winthrop Pharms., Inc.*, 347 Ark. 89, 97, 60 S.W.3d 428, 433 (2001)).

Once commonality is determined when deciding whether to certify a class, the next question is whether common questions of law and fact predominate over any questions affecting only individual members. *Rosenow v. Alltel Corp.*, 2010 Ark. 26, 358 S.W.3d 879. With regard to the predominance requirement of Rule 23(b), we must decide if the issues common to all plaintiffs predominate over the individual issues. *Baker v. Wyeth-Ayerst Labs.*, 338 Ark. 242, 992 S.W.2d 797 (1999). The predominance requirement, however, is more stringent than commonality. *Vickers*, 2009 Ark. 259 at 9, 308 S.W.3d at 578 (citing *BPS, Inc. v. Richardson*, 341 Ark. 834, 20 S.W.3d 403 (2000)). In *Vickers*, we explained the standard for testing predominance:

When deciding whether common questions predominate over other questions affecting only individual members, this court does not merely compare the number of individual versus common claims. Rather, this court decides if the preliminary,

overarching issues common to all class members "predominate over" the individual issues, which can be resolved during the decertified stage of a bifurcated proceeding. Thus, the mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members.

*Id.* (internal citations omitted).

If a case involves preliminary issues common to all class members, predominance is satisfied even if the court must subsequently decertify a class due to individualized damages. *Snowden*, 366 Ark. 138, 148, 233 S.W.3d 664, 670. However, if the preliminary issues are sufficiently individualized, then predominance is not satisfied, and class certification is improper. *Id.*, 233 S.W.3d at 671.

In reviewing ADVA's argument regarding predominance, we agree with its position. Even assuming that there are questions common to all class members, these common issues do not predominate over individual issues. In *Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995) we held that the circuit court abused its discretion in certifying the class and we reversed the circuit court's class-action certification. In *Baker*, we explained our ruling in *Arthur* as follows:

> In *Arthur*, patients who had an artificial substance called "Orthoblock" implanted in their spines filed a class-action lawsuit, which included a products-liability claim against Calcitek, the manufacturer of Orthoblock. *Id.* We held that class certification was improper because the individual issues of informed consent, causation, degree and types of injury, and damages predominated over the common issues. *Id.* In particular, as to causation the individual plaintiffs would have had to prove that their prior medical condition or history was not the cause of the injury, that they would not have undergone the implantation if they had known of the risks, and that the actions of the intermediary doctors did not abate some or all of Calcitek's liability. *Id.* Hence, the bifurcation approach could not be utilized because the defendant's liability to each plaintiff would have to be established on a case-by-case basis. *Id.* In reaching this

conclusion in *Arthur*, we relied upon products-liability cases from other jurisdictions where class certification was denied because the individual issues predominated over the common issues. *See Raye v. Medtronic Corp.*, 696 F. Supp. 1273 (D.Minn.1988) (holding that there were "not enough common questions of law or fact to justify use of the class mechanism" because issues of "causation, liability, and damages" would have to be separately litigated); *Rose v. Medtronic, Inc.*, 166 Cal. Rept. 16 (Cal. App. 1980) (holding that class certification was improper because the claimants had "varying periods of use of the product, varying needs for its replacement, varying elements of causation, varying degrees of injury, and varying amounts of damages").

338 Ark. at 248, 992 S.W.2d at 800–01.

Here, the employees seek to represent a diverse group of employees, approximately 150 individuals who have held one of over twenty nonnursing positions. The class certified by the circuit court includes the following positions: Administrative Specialist II, Administrative Specialist III, Cook, Food Preparation Manager, Food Preparation Technician, Food Preparation Specialist, Food Preparation Supervisor, Human Resources Specialist, Institutional Services Assistant, Institutional Services Specialist, Institutional Services Supervisor, Local Office Administrative Assistant, Maintenance Assistant, Maintenance Supervisor, Maintenance Technician, Public Safety Security Officer, Recreational Activity Leader I, Recreational Activity Leader II, Security Officer, Security Officer Supervisor, and Warehouse Specialist.

In *Okeke*, all the class members held nursing positions, which included Registered Nurses (RNs), Licensed Practical Nurses (LPNs), and Certified Nursing Assistants (CNAs). Unlike *Okeke*, where the nursing employees held the same or very similar positions, here, the class members do not share the same or similar job duties that would require them to work through their meal breaks. The issues of whether an employee worked during unpaid meal

SLIP OPINION

breaks and whether this resulted in the employee working over forty hours in a week will vary greatly with each employee. Like *Arthur* and *Baker*, in the present case, a bifurcation approach cannot be utilized because the issues of ADVA's liability and damages owed to each employee will have to be established on a case-by-case basis. Here, the individual issues clearly predominate over the common issues. As ADVA asserts, the mere existence of a policy of making automatic deductions for scheduled meal breaks does not, in and of itself, violate AMWA. A determination of ADVA's liability under AMWA would require a highly individualized inquiry as to each employee's hours worked during a given week because, if the employee did not work through lunch, and if the employee failed to work more than forty hours in a given work week, there could be no liability on the part ADVA. Stated differently, there is "no one set of operative facts" to establish ADVA's liability to any given class member. *Vickers*, 2009 Ark. 259 at 19, 308 S.W.3d at 582–583 (citing *Baker*, 338 Ark. at 247, 992 S.W.2d at 800).

Although, a circuit court has broad discretion in certifying a class action, we have not held that a circuit court's discretion is "so broad that it cannot be the subject of a proper review." *Vickers*, 2009 Ark. 259 at 20, 308 S.W.3d at 583 (citing *Arthur*, 320 Ark. at 289, 895 S.W.2d at 936–37). Based on the highly individualized nature of the employees' claims, the circuit court abused its discretion in certifying the class action, and we reverse and remand with instructions to decertify the class. Because we reverse, we do not reach the remaining issues on appeal.

Reversed and remanded with instructions to decertify the class.

Wood, J., concurs.

Danielson, Goodson, and Wynne, JJ., dissent.

**Rhonda K. Wood, Justice, concurring.** I join the majority opinion. Although the majority correctly distinguishes this case from *Arkansas Department of Veterans Affairs v. Okeke*, 2015 Ark. 275, 466 S.W.3d 399, I write separately to point out that I see no reason this court needs to distinguish it. For the reasons I set out in my dissenting opinion in *Okeke* and the reasons stated by the majority herein, neither of these cases was appropriate for class certification. *See id.* at 12–13, 466 S.W.3d at 406 (Wood, J. dissenting).

**Robin F. Wynne, Justice, dissenting.** Because there is no material difference between this appeal and its companion, *Arkansas Department of Veterans Affairs v. Okeke*, 2015 Ark. 275, 466 S.W.3d 399, issued June 18, 2015, and because the ADVA has not preserved the only ground upon which the majority distinguishes *Okeke* and reverses the circuit court's decision, I would affirm the class certification in this case as well. Accordingly, I respectfully dissent.

Earlier this year, this court upheld the certification of a class action against the ADVA. The allegations in that case, as in the instant case, were that the ADVA had unlawfully withheld overtime pay from its employees as a result of its policy to automatically deduct time for a meal break from its employees' time. The plaintiffs in that case, as here, alleged that the ADVA understaffed its facilities, requiring its employees to frequently work through their lunch breaks to complete their tasks, and thus, as a result of the automatic-deduction policy, the employees were working overtime without receiving compensation. We noted, "While

9

it may be true that automatic deductions for meal breaks are not per se unlawful, it does not necessarily follow that they are per se lawful." *Arkansas Dep't of Veterans Affairs v. Okeke*, 2015 Ark. 275, at 8, 466 S.W.3d 399, 404. Accordingly, we held that the issue of the reasonableness of ADVA's automatic deduction policy and any corresponding policy for reclaiming time was an overarching issue common to all class members and that it predominated over other issues.

In its opinion today, the majority states that "the mere existence of a policy of making automatic deductions for scheduled meal breaks does not, in and of itself, violate AMWA." This statement—a new holding regarding the law in Arkansas—is in contravention of this court's refusal to address in *Okeke* whether automatic deductions for meal breaks are a violation of the law. Reaching this point of substantive law is both unnecessary and in violation of the long-established rule that we do not reach the merits of a claim in deciding an appeal regarding class certification. This court has stated that neither the circuit court nor this court shall delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met. *Ark. Media, LLC v. Bobbitt*, 2010 Ark. 76, at 6, 360 S.W.3d 129, 134. A circuit court may not consider whether the plaintiffs will ultimately prevail or even whether they have a cause of action. *Id*. We, thus, view the propriety of a class action as a procedural question. *Id*. Therefore, the majority errs in reaching (indeed, simply accepting without any analysis) ADVA's argument on this point.

The majority attempts to distinguish *Okeke* on the ground that the nursing staff in that case had substantially similar job duties while the nonnursing hourly employees in the present

case held different job titles with different duties. The majority's holding on this point suffers

numerous infirmities. First, this issue was not developed before the circuit court and

accordingly it is not preserved for our review. The only reference to this argument before the

circuit court is one phrase in one sentence in the introduction of the ADVA's brief in

opposition to class certification in which the ADVA argues that the plaintiffs cannot satisfy

the applicable legal standard "given the varied job titles, job responsibilities and physical

working locations of the individuals whom Plaintiffs seek to represent." The remainder of

the brief wholly fails to develop this argument, providing no argument or citation to legal

authority on why the varied job titles and responsibilities is relevant or conclusive as to any

of the criteria for class certification,[1] and the circuit court did not rule on the issue in its order.

_____

[1]Rather than developing its argument regarding the varied job titles and responsibilities of the proposed class, the ADVA repeatedly stated that the "highly individualized" issues that defeated class certification were:
- Which employees missed a meal break because of work obligations?
- Which employees were not compensated for having a missed meal break?
- How often did each particular employee work through her meal breaks without getting compensated?
- Did the employee fill out a comp sheet, make a notation on her weekly time sheet, or otherwise apprise her employer of the situation? If not, why not?
- Did the employees know about the procedure in which employees are supposed to complete comp sheets to receive credit for working overtime?
- Were comp sheets available for the employee to complete and submit?
- Did a supervisor consider the employee's request to get compensated with regard to a particular missed meal break? Did the supervisor accept or reject the request?
- Did a supervisor prevent or discourage the employee from completing a comp sheet or otherwise recording her overtime work?
- Did a supervisor even know about the missed meal break or the fact that it went uncompensated?
- Did the employee otherwise physically work more than 40 hours in the particular workweek, or is the "missed meal" claim one for straight-time compensation that is not cognizable under the Arkansas Minimum Wage Act?

It is well settled that this court will not address an argument on appeal if it has not been argued before the circuit judge or if a party fails to obtain a ruling from that judge. *Simpson Hous. Solutions, LLC v. Hernandez*, 2009 Ark. 480, 22, 347 S.W.3d 1, 14. In *Simpson*, this court refused to address the appellant's argument that the enactment of a statute precluded certification of a class where the appellant had not developed the issue before the circuit court. Notably, in that case, the appellant had discussed the statute in its argument before the circuit court, but it had failed to fully develop the argument it sought to raise on appeal. Similarly, in this case, the fact that ADVA mentioned once in its brief that the potential class members had "varied job titles, job responsibilities, and physical working conditions" does not preserve its expanded argument on appeal.

Second, although the ADVA raises this challenge on appeal as one to predominance, a cursory review of their brief illustrates that their actual challenge is to the typicality of the class members, an issue which was also not raised before the circuit court. Under our case law, typicality requires that a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class so that the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members and may be redressed by pursuing the same legal theory. *Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 381 S.W.3d 21. We have held that the essence of the typicality requirement is the conduct

---

• How many hours, above 40, did the employee physically work in a given week in which the employee claims to have been improperly compensated?

Importantly, the ADVA advanced similar or identical issues in *Okeke* as defeating class certification. We disagreed, holding that these issues went to damages rather than liability.

of the defendants and not the varying fact patterns and degree of injury or damage to individual class members. *Diamante, LLC v. Dye*, 2013 Ark. 501, 15, 430 S.W.3d 710, 721. In this case, it is clear that ADVA's challenge on appeal is actually one to the typicality of the class representatives. For example, the ADVA argues in its brief that Ms. Mallet's affidavit is insufficient because it does not explain "how her job duties as a Human Resource Specialist make her representative of other class members with different job titles and job duties. The ADVA goes on to argue, "While her experiences may be representative of [one other Human Resource Specialist], there is no evidence that she is representative of the housekeepers, cooks, or maintenance workers (for example) who are included in the class." Later, ADVA argues that two other class representatives "fail to explain how they are similarly situated to any other class members. . . ." Clearly, ADVA's true argument on appeal is that the claims of the class representatives are not typical of those of the class, an argument which was not raised to the circuit court at all. Accordingly, the majority errs in reversing the circuit court on this point.

Finally, the majority's determination that the instant case differs from *Okeke* because the nursing staff in that case had substantially similar job duties while the nonnursing hourly employees in the present case have different job titles with different duties is a distinction without a difference. All hourly employees—nursing staff, food-preparation staff, security guards, etc.—were subjected to the same automatic-meal-deduction policy. If certification of the class in *Okeke* was not an abuse of the trial court's discretion, certification of the class in this case was also not an abuse of discretion. The crux of the appellees' complaints in both

13

cases is that ADVA understaffed its facilities, and when employees were required to work through their automatically deducted meal breaks, ADVA failed to compensate them for all overtime hours that they worked. Thus, just as in *Okeke*, the predominant issue common to all class members in this case is whether the automatic deduction policy of the ADVA is reasonable and whether ADVA has a reasonable reclamation policy for claiming overtime accrued as a result of missed meal breaks. As the majority does not overturn our decision in *Okeke*, the doctrine of stare decisis mandates that we hold that the circuit court did not abuse its discretion in certifying the class under any of the challenged Rule 23 factors—commonality, predominance, and superiority.

For the above reasons, I respectfully dissent.

DANIELSON and GOODSON, JJ., join.

*Leslie Rutledge*, Att'y Gen., by: *David A. Curran*, Deputy Att'y Gen., and *Amber R. Schubert* Ass't Att'y Gen., for appellant.

*Holleman & Associates, P.A.*, by: *John Holleman*, *Timothy A. Steadman*, and *Matthew Ford*, for appellees.