Cite as 2019 Ark. 296

# SUPREME COURT OF ARKANSAS

No. CV-18-799

| | |
|---|---|
| | Opinion Delivered: October 24, 2019 |
| DRIVER SOLUTIONS, LLC<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT<br>[NO. 60-CV-17-3242] |
| V. | |
| MICHAEL DOWNEY, PAUL MITCHELL, AND JOSEPH MCAFEE<br>APPELLEES | HONORABLE MACKIE M. PIERCE, JUDGE<br><br>AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

Driver Solutions, LLC, appeals the June 5, 2018 class-certification order and the June 27, 2018 supplemental order of the Pulaski County Circuit Court. Our jurisdiction is proper pursuant to Ark. R. App. P. –Civil 2(a)(9). We affirm.

## I. *Background*

Driver Solutions, LLC (Driver Solutions) filed separate lawsuits in North Little Rock District Court against Michael Downey, Paul Mitchell, and Joseph McAfee (counter-plaintiffs). In each case, Driver Solutions sought to recover "unpaid principal balance for . . . Tuition Charge(s)[.]" Mitchell and McAfee initially defaulted, but the district court later set aside both default judgments for improper service. Downey timely answered.

Downey, Mitchell, and McAfee all filed class-action counterclaims. The cases were transferred to the Pulaski County Circuit Court and consolidated.

The general substance of the allegations contained in the class-action counterclaim is as follows. Driver Solutions is in the business of providing education and placement services to individuals who wish to work in the commercial truck-driving industry. Driver Solutions and C-1 Truck Driver Training, LLC (C-1), are both owned by Driver Holding, LLC. Counter-plaintiffs allege that Driver Solutions attracts potential students from around the country to the C-1 facility in North Little Rock, Arkansas by advertising "company-paid training" and good-paying driver jobs ("up to $50,000 per year") with large carriers, such as P.A.M. Transport.

Once students arrive at C-1 for training, they are presented with what counter-plaintiffs characterize as a "one-sided, unconscionable adhesion contract." The contract in the record provides that students who complete the training will owe Driver Solutions $5,995. The contract contains a provision allowing for the total cost of the program to be reduced. If after completion of the program participants then go work for the designated carrier for an entire year, during which $45 will be deducted from the participant's paycheck each week and placed in an "Employee Savings Account," the participant will receive a $4,000 credit toward the cost of the program and remain liable for $1,995. The contract contains no indication as to what the designated carrier's compensation package for the participant will be. If participants fail to go work for the designated carrier for an entire year, the full $5,995 becomes due and payable to Driver Solutions on demand.

2

The counterclaim alleges that after completing the program, participants find that their earning potential with the designated carrier is nowhere near what had been represented when they signed the enrollment agreements with Driver Solutions. Participants rarely, if ever, earn $50,000 in a year of working for the designated carrier—far less, according to the counter-plaintiffs. However, if participants leave the designated carrier to work somewhere else, they become liable for $5,995, due and payable on demand. In this way, counter-plaintiffs allege that the contract functions as a "sword of Damocles," tying program participants to a low-wage job.

The counterclaim further alleges that Driver Solutions has filed at least 433 lawsuits in North Little Rock District Court, and that Driver Solutions has failed to obtain proper service in every single one of those lawsuits, including 143 cases in which Driver Solutions already obtained default judgments. Additionally, the counterclaim alleges that Driver Solutions is operating its driver-education program without ever obtaining the applicable licenses statutorily required to do so, while also violating numerous regulations established by the State Board of Private Career Education.

Based upon these allegations, the counterclaim sets forth ten claims for relief. The first five are Arkansas Deceptive Trade Practices Act (ADTPA) claims: Count I – ADTPA (False and Misleading Statements); Count II – ADTPA (Violating Statutes and Regulations Pertaining to Private Career Education); Count III – ADTPA (Unenforceable Penalty); Count IV – ADTPA (Usury); and Count V – ADTPA (Totality of Conduct). Count VI

3

seeks a declaratory judgment. The last four are common law claims: Count VII – Usury; Count VIII – Fraud; Count IX – Promissory Estoppel; Count X – Unjust Enrichment.

After consolidation, the counter-plaintiffs moved for class certification. Following a hearing, the circuit court entered an order granting class certification on June 5, 2018. The order certified the following class:

> All individuals who attended C-1 Truck Driving School in North Little Rock between January 19, 2009, and the present, through Driver Solutions' "company-paid training" and did not complete one year of employment with the carrier.

Driver Solutions requested findings of fact and conclusions of law, and the circuit court entered a supplemental order on June 27, 2018. The supplemental order explained that the phrase "company-paid training" refers to "Driver Solutions' program or programs that Counterclaimants and others enrolled in whereby those individuals did not pay tuition ahead of time and signed an agreement whereby they would not pay tuition (or would only pay a portion of the tuition through payroll deductions) if they worked for an assigned motor carrier for one year." Driver Solutions filed its notice of appeal on July 3, 2018.

## II. *Law*

Questions of class certification are reviewed for abuse of discretion. *Baptist Health v. Haynes*, 367 Ark. 382, 384, 240 S.W.3d 576, 578 (2006).

Rule 23 of the Arkansas Rules of Civil Procedure governs class actions and certification. The test for class certification under Rule 23 has six elements: (1)

numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. *Lenders Title Co. v. Chandler*, 353 Ark. 339, 344, 107 S.W.3d 157, 159 (2003).

Rule 23 "does not require that all questions of law or fact be common, but rather the standard is that there need be only a single issue common to all members of the class." *Ark. Dep't of Veterans Affairs v. Okeke*, 2015 Ark. 275, at 7, 466 S.W.3d 399, 403–04 (citing Ark. R. Civ. P. 23). "When deciding whether common questions predominate over other questions affecting only individual members, this court does not merely compare the number of individual claims versus common claims. Rather, this court decides if the preliminary, overarching issues common to all class members 'predominate over' the individual issues." *Okeke*, 2015 Ark. 275, at 9. A representative's "claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if [the representative's] claims are based on the same legal theory." *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 274–75, 954 S.W.2d 898, 903–04 (1997), *rev'd on other grounds by, Industr. Welding Supplies of Hattiesburg, LLC v. Pinson*, 2017 Ark. 315, 530 S.W.3d 854. Superiority is satisfied where "class certification is the more efficient way of handling the case, and it is fair to both sides." *Okeke*, 2015 Ark. 275, at 11.

Additionally, a class must be "ascertainable"; its members must be determinable by objective criteria. *Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 615, 232 S.W.3d 444, 449 (2006).

III. *Analysis*

5

Driver Solutions contends that the certified class fails to satisfy the requirements of commonality, predominance, typicality, superiority, and ascertainability. The underlying basis for Driver Solution's arguments is that each class member's claim will turn upon the individual class member's own subjective interpretations of the advertisements and enrollment agreements, making them inappropriate for consideration on a class-wide basis.

However, Driver Solutions' contention is overbroad. There is no dispute that each class member manifested assent by signing the agreement, nor is there any indication that the terms of the signed agreements vary from class member to class member in any material way. Many of the counter-plaintiffs' allegations, relating to both their ADTPA and common law claims, will be resolved with little more than a review of the four corners of the enrollment agreements, and without any assessment of the means by which Driver Solutions procured its students. If the terms of the agreement are in fact illegal, tortious, usurious, unconscionable, or otherwise actionable on their face, that would be true regardless of the circumstances by which a class member came to sign the agreement and would apply to all class members. Therefore, any question determinable on the face of the agreements is appropriate for consideration on a class-wide basis and meets the requirements of Rule 23.

The class vehicle is appropriate to address even a single question or issue where the requirements for certification are otherwise satisfied, and there is at least one such question or issue in this case: whether Driver Solutions was a "school" for purposes of Ark. Code Ann. § 6-51-602(11) (Repl. 2013) when the parties entered into these

6

enrollment agreements. Those entities fitting the definition of a "school" for purposes of Ark. Code Ann. § 6-51-602(11) are required to obtain licenses from the State Department of Higher Education before operating or soliciting the enrollment of students. Ark. Code Ann. § 6-51-505(a). Contracts, promissory notes, or other evidence of indebtedness between students or prospective students and unlicensed "schools" are null and void, and students have the right to recover moneys paid for enrollment in an unlicensed school. Ark. Code Ann. § 6-51-613. Driver Solutions admitted in its answer that it has not obtained a license from the Department of Higher Education but denied that it fits the definition of a "school" for purposes of Ark. Code Ann. § 6-51-602(11). Under these circumstances, the question of whether Driver Solutions fits the definition of a "school" is appropriate for consideration on a class-wide basis.

This issue will be common to the claims asserted by each class member, and there is no indication that the assessment of this question will vary from class member to class member in any meaningful way. Commonality is satisfied. Moreover, this issue will be central to the claims of each class member, and its resolution alone can determine whether liability attaches to Driver Solutions for moneys that would be recoverable on the enrollment agreements. Predominance is satisfied. The named counter-plaintiffs' claims arise from the same "event or *practice* or course of conduct" that would give rise to the claims of the other class members, and the named counter-plaintiffs' claims are based upon the same legal theories. Typicality is satisfied. Additionally, it would be far more efficient to address this issue in one lawsuit on a class-wide basis than to address the same issue time

7

and time again in numerous separate lawsuits. There is no legitimate indication that utilizing the class mechanism for these purposes will be unfair to either party. Superiority is satisfied.

Furthermore, the proposed class is ascertainable; its members can be determined by objective criteria. If someone both (1) enrolled in a Driver Solutions program fitting the order's definition of "company-paid training" during the class period, and then (2) did not complete one year of work with the designated carrier, that person is included in the class.

As a separate point on appeal, Driver Solutions argues in its brief that the circuit court's certification of the class should be reversed in light of the passage of Act 986 by the Arkansas General Assembly in 2017. Act 986, which took effect July 30, 2017, changed the law to prohibit litigants from pursuing an ADTPA claim through a class action. The trial court found that Act 986, which does not contain an emergency clause, was only intended to apply prospectively. The counter-plaintiffs filed their lawsuit on June 15, 2017, well before Act 986's effective date, but Driver Solutions contends on appeal that Act 986 should nonetheless be given retroactive effect because it only impacts one's a procedural rights (the ability to litigate an ADTPA claim through a class action), as opposed to impacting a substantive right. Counter-plaintiffs' response is that if Act 986 is truly procedural in nature, then the Act violates the separation of powers and is therefore unconstitutional. The Arkansas Constitution provides that "[t]he Supreme Court shall prescribe the rules of pleading, practice and procedure for all courts[.]" Ark. Const. amend. 80, § 3.

8

We decline to address the merits of this question. This is an interlocutory appeal, and our jurisdiction is limited to the purpose for which the interlocutory appeal is allowed. Driver Solutions is appealing pursuant to Arkansas Rule of Civil Procedure –Civil 2(a)(9), which allows interlocutory review of "[a]n order granting or denying a motion to certify a case as a class action in accordance with Rule 23 of the Arkansas Rules of Civil Procedure[.]" Driver Solutions argues that we should address the impact of Act 986 at this juncture instead of later in the case, but that would go considerably beyond an assessment of whether the circuit court abused its discretion in finding that Rule 23's factors were satisfied; this court would have to assess the constitutionality of Act 986, which does not contain a severability clause, in its entirety.

Driver Solutions did contend at oral argument that this court could consider the impact of Act 986 in its analysis of Rule 23's superiority factor. To the extent we have jurisdiction to address this argument, we decline to adopt it. The superiority analysis is simply about efficiency, *Okeke*, 2015 Ark. 275 at 14, and the General Assembly's expressed sentiment as to whether ADTPA class actions are generally appropriate is irrelevant to that inquiry.

IV. *Conclusion*

The circuit court's determination that each requirement for class certification was satisfied in this case was not an abuse of discretion. The passage of Act 986 does not alter this conclusion.

Affirmed.

9

WOMACK, J., concurs in part and dissents in part without written opinion.

*Conner & Winters, LLP*, by:  *Robert L. Jones III*, and *Kerri E. Kobbeman*, for appellant.

*Holleman & Associates, P.A.*, by:  *John Holleman* and *Timothy A. Steadman*, for appellees.